650 S.E.2d 486

**Kent E. SMITH and Dorothy Smith, Respondents,**

v.

**Dr. Daniel BARR, Appellant.**

**No. 4280.**

Court of Appeals of South Carolina.

Submitted May 9, 2007.
Decided July 26, 2007.
Rehearing Denied Sept. 25, 2007.

W. Grady Jordan, Olson, Smith, Jordan & Cox, PA, of Easley, for Appellant.

W.D. Yarborough, Jr., of Greenville, for Respondents.

WILLIAMS, J.

Defaulting taxpayers brought an action to set aside a tax sale of real property, arguing Greenville County did not follow the statutory requirements. The Master–in–Equity (the Master) issued an order setting aside the tax sale. The purchaser of the property at the tax sale appeals. We affirm.

## FACTS

In 1999, Kent Smith and Dorothy Smith (collectively the Smiths) purchased real property (the Property) located in Greenville County, South Carolina. At the time of the purchase, the Smiths resided in Taylors, South Carolina. Subsequent to this purchase, the Smiths moved to a new residence.

Mr. Smith testified he sent a letter to the Greenville County Tax Office (Tax Office) notifying it of his change of address. Mr. Smith further testified he instructed the Tax Office to send future tax notices regarding the Property to the new address.

The Tax Office either did not receive Mr. Smith's letter or failed to modify its records. As a result, the tax notices continued to be sent to the Smiths' old address rather than their new address. The Smiths failed to pay the real property taxes for 2001. Accordingly, the Tax Office allegedly posted a delinquent tax sale notice on the Property.

The Smiths assert the notice was not posted on the Property, or in the alternative, the notice was improperly posted. In either case, the taxes remained unpaid. Consequently, a delinquent tax sale was conducted. Dr. Daniel Barr acquired the Property at the sale for approximately $25,000.

The Smiths brought an action to set aside the tax sale and to quiet title. The Smiths argued the Tax Office failed to follow statutory requirements that control how a delinquent tax sale is to be conducted. Specifically, the Smiths argued the Tax Office failed to send the tax notices to their new

address. In the alternative, the Smiths contended the Tax Office failed to properly post a delinquent tax sale notice on the Property.

The Master–in–Equity, following a trial (1) set aside the tax sale because the Tax Office did not comply with the relevant statutory mandates; (2) ordered the Register of Deeds for Greenville County to mark "cancelled of record" on the deed given to Dr. Barr; (3) ordered the Smiths to reimburse Dr. Barr for any property taxes paid by the latter; (4) ordered Greenville County to reimburse Dr. Barr any amount Dr. Barr paid at the time of the tax sale; and (5) directed Dr. Barr to address any claim for interest on his bid to the Tax Office rather than to the Smiths. Dr. Barr appeals.

## STANDARD OF REVIEW

■ Our scope of review for a case heard by a Master permits us to determine facts in accordance with our own view of the preponderance of the evidence. *Tiger, Inc. v. Fisher Agro, Inc.,* 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989); *see Folk v. Thomas,* 344 S.C. 77, 80, 543 S.E.2d 556, 557 (2001) (An action to set aside a tax deed rests in equity. Thus, an appellate court may take its own view of the preponderance of the evidence.). If we choose to find facts in accordance with our view of the evidence, we must state such findings of fact and our reasoning for those findings. *Dearybury v. Dearybury,* 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002).

However, we are mindful that this scope of review does not require us to disregard the Master's factual findings because the Master saw and heard witnesses and was in a better position to judge their credibility and demeanor. *Godfrey v. Heller,* 311 S.C. 516, 518, 429 S.E.2d 859, 860 (Ct.App.1993).

## LAW/ANALYSIS

Dr. Barr contends the Master erred in setting aside the tax sale. Specifically, Dr. Barr argues the Tax Office followed the statutory notice requirements of a tax sale. Dr. Barr also asserts equity favors a reversal of the Master's decision. Finally, Dr. Barr avers that even if the Master correctly set aside the tax sale, the Master erred by not requiring the Smiths to pay interest. We address each argument in turn.

## A. Notification requirements

 The sale of a defaulting taxpayer's real property is strictly governed by statute. *F.C. Enters., Inc. v. Dibble*, 335 S.C. 260, 263, 516 S.E.2d 459, 461 (Ct.App.1999). The proper procedure for notifying a taxpayer of delinquent taxes before conducting a tax sale is set out in section 12–51–40 of the South Carolina Code (Supp.2006). Section 12–51–40(b) authorizes the Tax Office to "take exclusive possession of the property necessary to satisfy the payment of the taxes...." Among the acceptable means the Tax Office can employ to take possession, and the most relevant to this case, is by "posting a notice at one or more conspicuous places on the premises...." § 12–51–40(c).

 The rationale behind posting such a notice is to notify the defaulting taxpayer that delinquent property taxes are due. § 12–51–40. The failure to give the required statutory notice renders the tax sale invalid. *Rives v. Bulsa*, 325 S.C. 287, 293, 478 S.E.2d 878, 881 (Ct.App.1996).

Dr. Barr argues the Master erred in setting aside the tax sale. Specifically, Dr. Barr maintains the Master erred by shifting the burden of proof to require Dr. Barr to prove the tax sale conformed to the law. Dr. Barr's arguments are misplaced.

 Generally, there are two types of burdens: burden of production and burden of persuasion. Burden of production refers to a party's responsibility to introduce sufficient evidence on a contested issue to have that issue decided by the fact-finder, rather than decided against the party in a preemptory decision such as directed verdict. *Pike v. S.C. Dep't of Transp.*, 343 S.C. 224, 231, 540 S.E.2d 87, 91 (2000). Burden of persuasion is concerned with a party's obligation to sway the fact-finder to view the facts in a way that favors that party. *Id.*

 In civil cases, the burden of persuasion rests with the plaintiff to prove his or her case, usually, by a preponderance of the evidence. In criminal cases, the burden of persuasion requires the state to prove the defendant's guilt beyond a reasonable doubt.

In the present case, the burden of production is of little concern because neither party moved for a preemptory decision. Conversely, the burden of persuasion is of interest. In this non-jury case, the Master was the fact-finder. Therefore, the Smiths shouldered the burden to prove to the Master, by a preponderance of the evidence, that the Tax Office failed to properly post the required statutory notice on the Property. S.C.Code Ann. § 12–51–160 (Supp.2006) ("In all cases of tax sale the deed of conveyance ... executed to a private person ... is prima facie evidence of good title in the holder, that all proceedings have been regular and that all legal requirements have been complied with."). There is ample evidence in the record that shows the Smiths met their burden. This evidence consists of testimony and the deed the Smiths acquired upon purchase of the Property.

Dorothy Smith worked in the subdivision where the Property is located. She testified she would frequent the Property or the land adjoining the Property at least once a week. She gave evidence that during those visits she never noticed a delinquent tax sign on the Property. Kent Smith also gave testimony that he did not believe a delinquent tax sign was posted on the Property. The Smiths' testimony may be viewed as self-serving, but Scott Rector's testimony substantiates it.

Scott Rector, the manager of the subdivision where the Property is located, testified on behalf of the Smiths. Rector's testimony speaks for itself.

Q: All right, have you ever seen a delinquent sale sign on [the Property]?

A: No, sir, I have not.

Q: Do you know what a delinquent sale sign is?

A: Yes, sir.

. . .

Q: All right, now, how many times would you say ... you have gone by [the Property] or been involved with [it]?

A: Well, pretty well every lot [in the subdivision], I would kind of go by once every couple of weeks.... But during that period of time, there was purposes [sic] when we were in there every day. Like I say, we also

have some materials actually stored on the [Property] that we use from time to time, some large boulders and things, so like I say, at least once a week to once every two weeks.

Q: And on those frequent visits, you never saw a delinquent sale sign on the [Property]?

A: No sir. No, sir.

Rector's testimony proves he was familiar with the Property due to his frequent visits. During these regular visits, Rector did not notice a delinquent tax sign on the Property, even though he could readily identify a tax sign. Additionally, the deed of conveyance confirms Rector's and the Smiths' account that the Tax Office failed to post a delinquent tax sign on the Property.

When the Smiths received title to the Property, the deed of conveyance listed an incorrect identification number. This deed listed the Property's tax map number as 0645.06–01–003.00.[1] This number corresponds to the lot that is located directly across the street from the Property. The Tax Office utilized, at least partly, the tax map number in determining on which lot to post the delinquent tax sign. Although this misnomer was corrected, the record is unclear as to whether the correction was accomplished prior to or subsequent to the tax sale.

The incorrect tax map number and the testimony of the Smiths and Rector provide a sufficient basis to conclude the notice was not placed on the Property. Thus, even if the Master improperly placed the burden upon Dr. Barr to demonstrate the tax sale complied with the requisite statutory requirements, based on our view of the preponderance of the evidence, we hold the Smiths met their burden to prove the Tax Office failed to post the mandatory notice on the Property as mandated by section 12–51–40.

**B. The equity claim**

Dr. Barr argues equity requires the tax sale be validated. We disagree.

---

1. The correct number for the Property is 0645.06–01–001.00.

The Master ordered Greenville County to reimburse Dr. Barr any amount he paid at the time of the tax sale. Additionally, the Smiths were ordered to reimburse Dr. Barr any property taxes paid by the latter. As such, Dr. Barr will recover the money he spent on purchasing the Property at the tax sale. We fail to see how this result is inequitable. Moreover, other considerations support our conclusion.

It is well known that equity follows the law. *C & S Nat'l Bank v. Modern Homes Constr. Co.*, 248 S.C. 130, 133, 149 S.E.2d 326, 327 (1966). In South Carolina, "all requirements of the law leading up to tax sales which are intended for the protection of the taxpayer against surprise or the sacrifice of his property are to be regarded mandatory and are to be strictly enforced." *Donohue v. Ward*, 298 S.C. 75, 83, 378 S.E.2d 261, 265 (Ct.App.1989) (internal citations and quotations omitted). Additionally, the failure to give the required statutory notice renders the tax sale invalid. *Rives*, 325 S.C. at 293, 478 S.E.2d at 881.

As discussed above, the Tax Office failed to properly post the required statutory notice on the Property. As a result, the law mandates that we set aside the tax sale. Consequently, equity does not provide Dr. Barr relief because equity follows the law.

## C. Interest payment

■ Dr. Barr's final argument is that if the tax sale is set aside, he is entitled to an interest payment on the purchase price from the Smiths. In support of this claim, Dr. Barr relies on section 12–51–90 of the South Carolina Code Section (Supp.2006).

Section 12–51–90 provides that "[t]he defaulting taxpayer . . . may within twelve months from the date of the delinquent tax sale redeem each item of real estate by paying to the person officially charged with the collection of delinquent taxes, assessments, penalties, and costs together with interest. . . ." The plain language of the statute does not entitle Dr. Barr to recover interest payments from the Smiths.

## CONCLUSION

Accordingly, the Master's decision is **AFFIRMED.**[2]

STILWELL and SHORT, JJ., concur.

---

**2.** We decide this case without oral argument pursuant to Rule 215, SCACR.