THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 D.R. Horton,
 Inc., Respondent,
 v.
 Campus Housing
 Company, LLC, Appellant.
 
 
 

Appeal From Beaufort County
Curtis Coltrane, Special Circuit Court
 Judge
Unpublished Opinion No.   2008-UP-335  
Heard May 8, 2008  Filed July 1, 2008
AFFIRMED 

 
 
 
 Barry Johnson and Jason Ward, both of Okatie, for Appellant.
 James Herring and G. Hamlin OKelley,  both of Bluffton, for
 Respondent.
 
 
 

PER CURIAM:  Campus
 Housing Company, LLC (Campus Housing) appeals the trial courts order denying
 its claims for reformation and specific performance of a land sale contract entered
 into with D.R. Horton, Inc. (Horton).  We affirm.   
FACTS
On January 29, 2003, Horton and Campus Housing entered into a contract
 for the purchase of real estate in Beaufort County.  Pursuant to the contract,
 Campus Housing was obligated to make deposits into escrow in four separate
 amounts at specific times.[1] 
 The contract also provided the Seller will have reasonable ARB [Architectural
 Review Board] approval over the product that will be built by the Purchaser,
 with said ARB guidelines being provided to the Purchaser by the Seller during
 the Due Diligence Period.
On November 19, 2003, the parties amended the original contract
 with an Addendum to Purchase Agreement (Addendum).  In the Addendum, Campus Housing
 had until April 25, 2004 to complete its due diligence study on the property to
 determine the suitability of the property for its intended use.  Campus Housing
 could then choose to either terminate the agreement or make the final deposit
 into escrow.
On April 2, 2004, Horton and Campus Housing entered into a new
 contract for the purchase and sale of additional property in Beaufort County.  The new contract also gave Campus Housing until April 25, 2004 to complete
 its due diligence study to determine if it wanted to make the final deposit
 into escrow.
By letter dated April 21, 2004, Campus Housing informed Horton that
 pursuant to the contract, it believed the deadline for delivering its ARB
 guidelines (guidelines) to Campus Housing was April 7, 2003, more than a year
 prior to the date of the letter.  Therefore, Campus Housing argued the due
 diligence period should be extended for a period equal to the time between the
 due date and the date Horton would be providing the guidelines to Campus
 Housing.  In a second letter, Campus Housing further claimed it was not
 required to close until Horton provided the guidelines, even though the original
 contract set the closing for fifteen days after the end of the due diligence
 period.  Horton rejected Campus Housings argument, claiming the delivery of
 the guidelines was not a condition precedent to Campus Housings obligation to
 make the escrow deposits.
As of April 26, 2004, Campus Housing had not made the final
 deposits into escrow or terminated either contract.  On April 26, Campus
 Housing sent notices to Horton alleging Horton was in default under the terms
 of both contracts.  Specifically, Campus Housing claimed Horton failed to timely
 provide the guidelines because Horton was obligated under the contracts to
 provide the guidelines to Campus Housing during the time period Campus Housing
 was required to complete its due diligence studies.  The following day, Horton
 sent a notice of default to Campus Housing for failure to make the escrow payments. 
 According to the original contract, each party was entitled to written notice
 of default and would have fifteen days from the receipt of the notice to cure
 the alleged defect.
On April 30, 2004, Horton wrote to Campus Housing providing the guidelines
 Horton intended to impose on the land: 

 [T]he only [guidelines] which Horton will impose on [the land] . .
 . would be Hortons prior written approval of the design and exterior color of
 any improvements [to the land] within 100 of the properties common boundary
 line with property owned by [Horton] and within 150 of the intersection of any
 right of way at the point where such right of way crosses from property owned
 by [Horton] into properties owned by Campus Housing.

The letter
 further stated if [Campus Housing] purchases all properties . . . currently
 under contract to purchase from [Horton] there will be no [guidelines] imposed
 by [Horton].
On May 3, 2004, Campus Housing wrote to Horton asking for
 clarification as to what guidelines Horton planned to employ.  In response,
 Horton wrote Campus Housing the next day addressing Campus Housings
 questions.  However, Campus Housing contended Hortons letters did not
 sufficiently provide the architectural guidelines required by the contract.  Neither
 the original contract nor the Addendum defines what the parties intended by the
 term guidelines.
Subsequently, Horton wrote to Campus Housing informing them Horton
 was willing to enter into negotiations to revive the January 29 contract because
 Horton considered the contracts to be terminated due to Campus Housings
 failure to timely make their payments.  The same day, Campus Housing wrote to
 Horton contending Horton had not provided the guidelines as required and rejecting
 Hortons assertion the contracts had been terminated.
On May 26, 2004, Horton filed a declaratory judgment action
 against Campus Housing for breach of contract.  On June 2, Campus Housing filed
 its answer and counterclaims for reformation and special performance.  After a
 trial without a jury, the trial court issued its order denying both parties
 claims.  Both parties filed Rule 59(e), SCRCP, motions to alter or amend, which
 the court denied on February 8, 2007.  This appeal followed. 
STANDARD OF REVIEW
A
 suit for declaratory judgment is neither legal nor equitable, but is determined
 by the nature of the underlying issue.  Gordon v. Colonial Ins. Co. of Cal., 342 S.C. 152, 155, 536 S.E.2d 376, 378 (Ct. App. 2000).[2] 
 Reformation of a contract and an action for specific performance are actions in
 equity.  Glasscock, Inc. v. U.S. Fidelity & Guar. Co., 348 S.C. 76, 81,
 557 S.E.2d 689, 691 (Ct. App. 2001); Ingram v. Kaseys Assocs., 340 S.C.
 98, 531 S.E.2d 287 (2000); see Godfrey v. E.P. Burton Lumber Co.,
 88 S.C. 132, 133, 70 S.E. 396, 397 (1910).  In an action in equity, tried by
 the judge alone, the appellate court has jurisdiction to find facts in
 accordance with its views of the preponderance of the evidence.  Townes
 Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775
 (1976).  However, we are not required to disregard the factual findings of the trial
 court, who saw and heard the witnesses and was in a better position to judge
 their credibility.  Smith v. Barr, 375 S.C. 157, 160, 650 S.E.2d 486,
 488 (Ct. App. 2007). 
LAW / ANALYSIS
I.  Architectural Guidelines
Campus
 Housing argues the trial court erred in finding Horton fulfilled its obligation
 to provide guidelines to Campus Housing because the materials provided were not
 as contemplated by the parties.  We disagree.
Campus Housing contends Hortons letters did not provide the
 guidelines required by the contract; however, the contracts did not define what
 the parties intended by the use of the word guidelines.  The January 29 contract
 provided the Seller will have reasonable ARB [Architectural Review Board]
 approval over the product that will be built by the Purchaser, with said ARB
 guidelines being provided to the Purchaser by the Seller during the Due
 Diligence Period.  In a letter to Campus Housing, Horton stated the only guidelines
 Horton would impose on the land would be Hortons prior written approval of the
 design and exterior color of any improvements to the land within 100 feet of
 the properties common boundary line with property owned by Horton and within
 150 feet of the intersection of any right of way at the point where such right
 of way crosses from property owned by Horton into properties owned by Campus
 Housing.  Horton also added the review rights would not be unreasonable and
 Campus Housing was free to develop its property as it likes.  The letter
 further stated that if Campus Housing purchased all the properties it was under
 contract to purchase from Horton, Horton would not impose any guidelines.
Thus, sufficient evidence in
 the record supports the trial courts finding the contracts did not state what
 the parties meant by guidelines and Hortons letters were sufficient to fulfill its obligation under
 the contract.
II. 
 Specific Performance
Campus
 Housing also claims the trial court erred in holding Campus Housing was
 required to prove it was financially ready to close the deal to demand specific
 performance.  We disagree.
Specific
 performance should be granted only if there is no adequate remedy at law and
 specific enforcement of the contract is equitable between the parties.  Ingram
 v. Kaseys Assocs., 340 S.C. 98, 106, 531 S.E.2d 287, 291 (2000).  In Ingram,
 the Supreme Court of South Carolina held to compel specific performance, a
 court of equity must find: 

 (1) [T]here
 is clear evidence of a valid agreement; (2) the agreement had been partly
 carried into execution on one side with the approbation of the other; and (3)
 the party who comes to compel performance has performed his or her part, or has
 been and remains able and willing to perform his or her part of the contract.

Id. 
Here,
 Campus Housing meets the first two elements of specific performance as
 evidenced by record: (1) Horton and Campus Housing had a valid agreement and (2)
 Campus Housing met its obligations prior to April 26, 2004.  However, Campus
 Housing also had to prove the ability to perform part of the contract on June
 2, 2004, the date it brought an action for specific performance.  While evidence
 in the record suggests Campus Housing made efforts to obtain the money to close
 on the contracts, the evidence presented fails to show Campus Housing had the
 funds to do so on June 2, 2004.  Also, the managing director of Campus Housing,
 Craig Germain, testified during his deposition that Campus Housing did not have
 the money to close the deal as of May 10, or June 10, 2004.  Germain also
 stated Campus Housing did not have the money in its account to pay the final
 escrow deposits when they were due on April 26, 2004.
Therefore,
 Campus Housing failed to meet the third required element of its claim for
 specific performance and the trial court did not err by determining Campus
 Housing did not have the funds to purchase the property at the time it filed
 its action for specific performance.      
CONCLUSION
Because the contracts did not define what the parties intended by
 the use of the word guidelines, the trial court was correct in finding Hortons letter fulfilled its obligation to
 Campus Housing.  Also, the trial court correctly held Campus Housing
 failed to meet a required element of its claim for specific performance because
 the evidence presented showed Campus Housing did not have the necessary funds
 to purchase the land when the action was filed.  Therefore, the order of the
 trial court is  
AFFIRMED.
HEARN,
 C.J., and SHORT and KONDUROS, JJ., concur.

[1]  By
 July 2003, Campus Housing made the first three required deposits into escrow.
[2]  The claims presented to the trial court were both
 legal and equitable.  Horton filed a complaint alleging breach of contract,
 which is an action at law.  Auto Owners Ins. Co. v. Langford, 330 S.C.
 578, 581, 500 S.E.2d 496, 497 (Ct. App. 1998).  Campus Housing answered
 alleging claims for reformation and specific performance, which are actions in
 equity.  Because Horton did not appeal the trial courts order, we need only
 look at the scope of review for an action in equity.  See Kiriakides
 v. Atlas Food Sys. & Servs, Inc., 338 S.C. 572, 580, 527 S.E.2d 371,
 375 (Ct. App. 2000) (quoting Corley v. Ott, 326 S.C. 89, 92 n.1, 485
 S.E.2d 97, 99 n.1 (1997) (When legal and equitable actions are maintained in
 one suit, each retains its own identity as legal or equitable for purposes of
 the applicable standard of review on appeal.)).