694 S.E.2d 35

**Sheila KING, Respondent,**

v.

**Margaret JAMES, Beaufort County, a political subdivision of the State of South Carolina and Joy Logan, in her capacity as Treasurer for Beaufort County, South Carolina, Appellants.**

No. 4676.

Court of Appeals of South Carolina.

Heard Dec. 10, 2009.

Decided April 20, 2010.

18

Mary B. Lohr, of Beaufort, for Primary Appellants; J. Thomas Mikell, of Beaufort, for Secondary Appellants.

Alysoun M. Eversole, of Beaufort, for Respondent.

WILLIAMS, J.

In this case, Beaufort County (the County) argues the Master erred in finding the two-year statute of limitations in South Carolina Code section 12–51–160 (Supp.2008) did not apply to Sheila King's (King) action to set aside the 1999 tax sale of her property even though the action was brought in 2006. The County also contends the Master erred in finding the defenses of laches, estoppel, abandonment, acquiescence, and stale demand were inapplicable in this case. We affirm.

## FACTS AND PROCEDURAL HISTORY

This case involves a parcel of real property located in Hilton Head Island, South Carolina (the Property). King acquired title to the Property by deed from her brother-in-law in 1976 and has used the Property as her primary residence since that time. When King first acquired the Property, the address was Route 2, Box 328. At some point thereafter, the address changed to 92A Gumtree Lane. In the late 1990s, the address changed once again to 9 Holmes Lane, which is King's current address. King testified before the Master that the changes in the Property's address have occasionally caused her mail to arrive late or not at all.

King lived with her husband and daughter, Salina, on the Property. Because King does not drive, she always paid her property taxes by traveling with her husband to the courthouse and paying in cash. However, King's husband died in 1997 after a prolonged battle with lung cancer. According to the County's tax records, King failed to pay taxes on the Property for 1998. As a result, on October 4, 1999, the County sold the Property to Margaret James (James) for $2,100.[1]

Beaufort County Deputy Treasurer Herschel Evans (Evans) testified that leading up to the tax sale, the County sent tax

---

1. The tax sale produced an overage of $1,458.68.

delinquency notices to King in accordance with all statutory requirements. Pursuant to South Carolina Code section 12–51–40(a) (Supp.2008), the County first sent notice to King on or about April 1, 1999, that she had not paid her 1998 property taxes. After the taxes remained unpaid for thirty days, the County sent King another tax bill via certified mail pursuant to section 12–51–40(b). The certified mail notice was returned undelivered. In response to the return of the certified mail notice, Evans claimed the County took exclusive possession of the Property by posting the Property pursuant to section 12–51–40(c). Although Evans did not personally post the Property, he supported his assertion that it was posted by noting the County's tax records, which indicated Walter Mack, an agent of the County, posted the Property on August 6, 1999.[2] Evans testified that the County followed all statutory mandates leading up to the tax sale of the Property; however, the County concedes on appeal the notices to King were defective under *Hawkins v. Bruno Yacht Sales*, 353 S.C. 31, 577 S.E.2d 202 (2003).[3] Thereafter, pursuant to section 12–51–40(d), the County advertised the Property and sold it at a tax sale to James in 1999.

Although the Property was very close to James' home, she testified she had only a rough idea of the Property's location until she had it surveyed in March 2005. In fact, James believed she had purchased the land adjacent to the Property. After the survey showed James was the owner of the Property, James visited the Property and spoke with King and Salina. James first offered to sell the Property back to King for $50,000. However, the sale never materialized. Subsequently, James offered to lease the Property to King and Salina for $500 per month, and they entered into a lease agreement from September 2005 until September 2006.

---

2. Although Mack was present at the trial, Mack was never called to testify.

3. In *Hawkins,* the supreme court held delinquent tax notices stamped with payment deadlines that were weeks before the actual date of sale were not in strict compliance with statutory requirements, and therefore, the supreme court set aside the resulting tax sale. 353 S.C. at 38, 577 S.E.2d at 206. The County conceded it did not correct its notices pursuant to *Hawkins* until 2003. Therefore, these defective stamps were in the notices sent to King.

In April 2006, King brought an action against James and the County to set aside the tax sale. James and the County answered, asserting as defenses the two-year statute of limitations under section 12–51–160, laches, estoppel, waiver, abandonment, acquiescence, and stale demand. The case was tried in Beaufort County before Master–in–Equity Marvin H. Dukes (the Master) in 2008.

King and Salina testified at the hearing before the Master they had never received any notice from the County that the taxes on the Property were delinquent, nor had they seen any posting by the County on the Property. King testified when she attempted to pay taxes on the Property in 2000 at the Beaufort County courthouse, an employee told her the County would not accept her money, that there was an unspecified "problem" with her property taxes, and she should contact an attorney. King hired an attorney, Doug MacNielle, in 2001. According to King, MacNielle informed her he had "run a survey," and it showed her name "was still on the [Property]." When asked whether she thought to ask anybody else at the treasurer's office why she was not receiving any tax bills for the Property after 2000, she responded, "Honestly, no."

The Master held the statute of limitations in section 12–51–160 [1] was inapplicable to King's action because King remained in possession of the Property at all times and, to the extent the execution of the lease in 2005 constituted an "ouster," King brought her action to set aside the tax sale within two years of the ouster. In reaching this conclusion, the Master relied on *Dibble v. Bryant,* in which our supreme court held the earlier version of section 12–51–160 [5] "was intended to bar a defaulting and ousted taxpayer from maintaining an action

---

4. Pursuant to South Carolina Code section 12–51–160 (2006 & Supp. 2008), "An action for the recovery of land sold pursuant to this chapter or for the recovery of the possession must not be maintained unless brought *within two years from the date of the sale* as provided in Section 12–51–90(C)." (emphasis added).

5. The applicable statutory procedure for the sale of a delinquent taxpayer's property at the time *Dibble* was decided was set forth in sections 12–49–410 to –570, but was effectively repealed on January 1, 1986. *See* 1985 Act No. 166, § 17. The applicable code sections governing tax sales, such as King's, are now designated in sections 12–51–40 to –170.

to defeat the title of the tax sale purchaser and recover the land if brought more than two years from the date the purchaser came into possession." 274 S.C. 481, 487, 265 S.E.2d 673, 677 (1980).

As to the actual tax sale, the Master noted: "[T]ax sales must be conducted in strict compliance with statutory requirements." *Hawkins,* 353 S.C. at 36, 577 S.E.2d at 205. In light of the County's stipulation that notice was improper under *Hawkins,* the Master found the County failed to meet the "strict compliance" standard, and therefore, the tax deed was void and of no effect. The Master further held the County had failed to prove by a preponderance of evidence that King ever received any delinquent tax notices. Finally, the Master found "[n]o competent evidence was presented that [the Property] was properly posted," because Evans—the County's only witness—had no personal knowledge of the posting other than what was in the County's records, and both King and Salina testified they never saw a posting on the Property.[6] This appeal followed.

## STANDARD OF REVIEW

An action to set aside a tax sale lies in equity. *Smith v. Barr,* 375 S.C. 157, 160, 650 S.E.2d 486, 488 (Ct.App. 2007). Our scope of review for a case heard by a Master permits us to determine facts in accordance with our own view of the preponderance of the evidence. *Id.* However, this scope of review does not require this court to disregard the Master's factual findings because the Master saw and heard the witnesses and was, therefore, in a better position to judge the witnesses' credibility and demeanor. *Id.*

## LAW/ANALYSIS

### 1. Tax Sale

King argues the tax sale and resulting tax deed are invalid because the County failed to strictly comply with statutory notice requirements leading up to the tax sale. We agree.

---

6. Evans testified in 2003 the County began keeping photographic records of postings as evidence of postings.

"Tax sales must be conducted in strict compliance with statutory requirements." *In Re Ryan Investment Co.,* 335 S.C. 392, 395, 517 S.E.2d 692, 693 (1999) (citing *Dibble,* 274 S.C. at 483, 265 S.E.2d at 675). "[A]ll requirements of the law leading up to tax sales which are intended for the protection of the taxpayer against surprise or the sacrifice of his property are to be regarded [as] mandatory and are to be strictly enforced." *Donohue v. Ward,* 298 S.C. 75, 83, 378 S.E.2d 261, 265 (Ct.App.1989) (citing *Osborne v. Vallentine,* 196 S.C. 90, 94, 12 S.E.2d 856, 858 (1941)). "Even actual notice is insufficient to uphold a tax sale absent strict compliance with statutory requirements." *Ryan Inv. Co.,* 335 S.C. at 395, 517 S.E.2d at 693. "Failure to give the required notice [of a tax sale] is a fundamental defect in the tax sale proceedings which renders the proceedings absolutely void." *Rives v. Bulsa,* 325 S.C. 287, 293, 478 S.E.2d 878, 881 (Ct.App.1996).

Appellants have conceded the tax sale was not proper under *Hawkins* due to the defective stamp in the notices to King. Moreover, neither of the Appellants has appealed the Master's finding that the tax sale was not conducted in strict compliance with statutory requirements. Therefore, this ruling is the law of the case. *See ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997) (holding an unappealed ruling, right or wrong, becomes the law of the case). Accordingly, we affirm the Master's finding as to the invalidity of the tax sale and tax deed.

## 2. Statute of Limitations

Appellants argue even if the tax sale was improper under *Hawkins* due to the defective notice, the Master nevertheless erred in failing to apply the two-year statute of limitations from section 12–51–160 to bar King's claim because (1) section 12–51–160 clearly states the statute begins to run "from the date of the [tax] sale," and (2) alternatively, even if King did not have actual knowledge of the sale, the statute began to run against her in 2000 when an employee of the treasurer's office told her there was a "problem" with her taxes. We disagree.

One purpose of a statute of limitations is to relieve the courts of the burden of trying stale claims when a plaintiff

has slept on his or her rights. *McKinney v. CSX Transp., Inc.*, 298 S.C. 47, 49–50, 378 S.E.2d 69, 70 (Ct.App.1989). The statute of limitations begins to run at the time the cause of action accrues. *Harvey v. S.C. Dep't. of Corr.*, 338 S.C. 500, 508, 527 S.E.2d 765, 769 (Ct.App.2000) (citing *Matthews v. City of Greenwood*, 305 S.C. 267, 269, 407 S.E.2d 668, 669 (Ct.App.1991)). In analyzing a limitations defense, "[t]he fundamental test for determining whether a cause of action has accrued is whether the party asserting the claim can maintain an action to enforce it." *Id.* (quoting *Matthews*, 305 S.C. at 269, 407 S.E.2d at 669). Thus, a particular cause of action accrues "at the moment when the plaintiff has a legal right to sue on it." *Id.*

This court has held the purpose of the statute of limitations as set forth in section 12–51–160 is "to create a time limit during which one who lost title to property through a tax sale, after proper notice, may attempt to regain title." *Corbin v. Carlin*, 366 S.C. 187, 194, 620 S.E.2d 745, 749 (Ct.App.2005). A review of case law in this area reveals somewhat divergent decisions regarding if and when the statute of limitations begins to run in situations such as this.

On the one hand, we find case law that says when notice to the homeowner is not in strict compliance with the statute, such a defect is "jurisdictional," and the statute of limitations does not run at all. *See Donohue v. Ward*, 298 S.C. 75, 82, 378 S.E.2d 261, 265 (1989) (holding where a defect in notice is jurisdictional, such a defect "invalidates the tax proceeding and prevents the running of the limitations statute"); *Good v. Kennedy*, 291 S.C. 204, 207, 352 S.E.2d 708, 711 (1987) (holding "the general law is that where a statute requires as a condition precedent to foreclosing a taxpayer's rights in property sold for taxes that he be given notice of his right to redeem, such a requirement is generally regarded as jurisdictional . . . .") (internal quotations omitted).

On the other hand, we also find case law in which our courts interpreted previous versions of section 12–51–160 as saying even if the notice is defective, the statute of limitations still applies, but only begins to run when the purchaser comes into possession. *See Dibble v. Bryant*, 274 S.C. 481, 487, 265 S.E.2d 673, 677 (1980) (holding previous version of section 12–51–160 "was intended to bar a defaulting and ousted taxpayer

from maintaining an action to defeat the title of the tax sale purchaser and recover the land if brought more than two years *from the date the purchaser came into possession*") (emphasis added); *Glymph v. Smith*, 180 S.C. 382, 384, 185 S.E. 911, 914 (1936) (holding even though the plaintiff brought the action six years after the tax sale, the two-year statute of limitations never began to run because the sheriff never took possession of the subject property, and the purchaser was never put into possession following the execution of the tax deed); *Gardner v. Reedy*, 62 S.C. 503, 503, 40 S.E. 947, 947 (1902) (holding the two-year statute of limitations would only begin to run if and when the purchaser took possession).

Regardless of which of the two above interpretations is correct, Appellant's argument as to the statute of limitations necessarily fails because King brought her action within two years of the buyer coming into possession. In the present case, the Master held, and we agree, the County failed to establish by a preponderance of the evidence that it took "exclusive possession" of the Property by posting, as is required under section 12–51–40(c). Moreover, James could not reasonably be said to have withheld possession of the Property from King until 2005, when she had the Property surveyed and informed King of her ownership. Then and only then would the purchaser have come "into possession" under *Dibble*, such that the statute would begin to run. 274 S.C. at 487, 265 S.E.2d at 677; *see also Scott v. Boyle*, 271 S.C. 252, 256, 246 S.E.2d 887, 889 (1978) (holding section 12–49–570 did not bar an action to set aside a tax deed brought six years after the sale because there was insufficient evidence the purchaser ever obtained possession, and therefore, the statute never began to run); *Leysath v. Leysath*, 209 S.C. 342, 344, 40 S.E.2d 233, 236 (1946) (holding the two-year statute of limitations in section 12–49–570 "does not begin to run until the purchaser is put into possession").

Accordingly, we affirm the Master's holding that the two-year statute of limitations of section 12–51–160 does not bar King's action to set aside the tax sale in this case.

### 3. Other Defenses

The Master also held the Appellants' additional defenses of laches, estoppel, waiver, abandonment, acquiescence, and stale demand were likewise inapplicable. We agree.

### a. Laches and Stale Demand

Appellants argue laches and stale demand should apply to bar King's claims. We disagree.

Under the doctrine of laches, if a party, knowing his rights, does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights. *Chambers of S.C., Inc. v. County Council for Lee County,* 315 S.C. 418, 421, 434 S.E.2d 279, 280 (1993). The party seeking to establish laches must show: (1) a delay, (2) that was unreasonable under the circumstances, and (3) prejudice. *Hallums v. Hallums,* 296 S.C. 195, 199, 371 S.E.2d 525, 528 (1988). When a Master declines to make a finding of laches, that decision will not be disturbed absent an abuse of discretion. *Brown v. Butler,* 347 S.C. 259, 265, 554 S.E.2d 431, 434 (Ct.App.2001); *Premium Inv. Corp. v. Green,* 283 S.C. 464, 473, 324 S.E.2d 72, 78 (Ct.App.1984).

A stale demand, on the other hand, is

[O]ne that has for a long time remained unasserted; one that is first asserted after an unexplained delay of such great length as to render it difficult or impossible for the court to ascertain the truth of the matters in controversy and to do justice between the parties, or as to create a presumption against the existence or validity of the claim, or a presumption that it has been abandoned or satisfied.

*All Saints Parish, Waccamaw v. The Protestant Episcopal Church in the Diocese of S.C.,* 358 S.C. 209, 236, 595 S.E.2d 253, 268 (Ct.App.2004).

Strictly speaking, there are some points of distinction between laches and staleness of demand. *Bell v. Mackey,* 191 S.C. 105, 109, 3 S.E.2d 816, 824 (1939). For instance, a stale demand implies a greater lapse of time than is necessary to laches. *Id.* Moreover, laches generally involves such change in conditions as would render inequitable the enforcement of a claim, while no such change is necessary in order to create staleness of demand. *Id.* However, they both fall

within the same general principles of equity, and the distinctions are of little practical importance. *Id.*[7]

We find laches and stale demand to be inapplicable for two reasons. First, the lapse of time between James' assertion of ownership in 2005 and King's filing in 2006 was not of an unreasonable length. Although King was told there was an unspecified "problem" with her taxes in 2000, her attorney advised her in early 2001 that her name was still on the property. Under the circumstances, we find it was not unreasonable for King to decline to investigate the matter further in reliance on the advice of counsel.[8]

Second, neither James nor the County has shown sufficient prejudice resulting from King's delay such that affirming the Master would lead to an inequitable result. James testified she did not even know she owned the Property until 2005, and there is no evidence showing she has entered into any obligation or changed any position based on King's delay. James' only expense on the Property has been the ongoing property tax, which is not an expense caused by delay. The only injury the County has claimed is its inability to refund the purchase price to James because the unclaimed overage from the tax sale has escheated to the County's general fund pursuant to section 12–51–130 of the South Carolina Code (Supp.2009).[9]

7. We also note some courts have declined to recognize stale demand as anything more than a laches defense. *See, e.g., U.S. v. Admin. Enters.*, 46 F.3d 670, 672 (7th Cir.1995) ("There is no defense of 'staleness,' despite a dictum in *United States v. Gimbel*, 782 F.2d 89, 93 (7th Cir.1986), on which the appellants rely. Laches is a legal doctrine; it has structure; 'staleness' is an epithet."). Nonetheless, any such distinction would not be dispositive of this issue.

8. We do note that although King's attorney advised her in 2001 the Property was still titled in her name, King was arguably still on inquiry notice of the tax sale because despite the reassurance from her attorney, King did not receive any subsequent tax bills for the Property. The fact that King paid taxes every year since 1974 implies that she knew property taxes must be paid annually. Thus, the reasonableness of her failure to further investigate the "problem" is questionable. However, we believe laches is nevertheless inapplicable due to the Appellants' failure to show sufficient prejudice.

9. Section 12–51–130 provides in relevant part that overages produced at tax sales automatically escheat to the County's general fund if not claimed within five years from the date of the sale.

30

We find it would be inequitable to allow the County to claim the automatic operation of the statute as its source of prejudice in a case where it was the County's admitted failure to strictly comply with statutory requirements that led to an invalid tax sale.

Accordingly, we affirm the Master's findings as to the Appellants' laches and stale demand claims.

### b. Waiver/Abandonment/Acquiescence/Estoppel

Appellants argue the defenses of waiver, abandonment, acquiescence, and estoppel should apply because King and Salina waived their rights and/or acquiesced in James' rights to the Property by entering into a lease with James to rent the Property. We disagree.

A waiver is a voluntary and intentional abandonment or relinquishment of a known right. *Eason v. Eason,* 384 S.C. 473, 480, 682 S.E.2d 804, 807 (2009). In order for a party to waive a right, the party must have known of the right and known that the right was being abandoned. *Id.* The determination of whether one's actions constitute waiver is a question of fact. *Laser Supply & Servs., Inc. v. Orchard Park Assocs.,* 382 S.C. 326, 337, 676 S.E.2d 139, 145 (Ct.App.2009).

In this case, we do not believe King or Salina waived or abandoned any rights in the Property by entering into the lease with James. Salina testified they entered into the lease on advice of counsel as a means of preventing James from selling the property to a third party. Immediately upon learning of James' ownership interest in the Property, Salina and King took action to maintain the use of the property and challenge James' ownership of it. At all times after the survey in 2005, Salina and King were pursuing legal counsel, and we believe the execution of the lease was more in the nature of a strategic maneuver made in anticipation of litigation than an abandonment of their rights in the Property.

Accordingly, we affirm the Master's finding that waiver is inapplicable.

### CONCLUSION

Based on the foregoing, we affirm the finding of the Master that:

1. The tax sale was invalid pursuant to *Hawkins;*

2. Because the statute of limitations did not begin to run until the purchaser came into possession, King's action was timely; and

3. Laches, stale demand, waiver, estoppel, acquiescence, and abandonment do not apply to King's action.

**AFFIRMED.**