# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Alvetta L. Massenberg, Petitioner,

v.

Clarendon County Treasurer, Clarendon County Delinquent Tax Collector, Blacktop Ventures, LLC, Respondents.

Appellate Case No. 2023-000098

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Clarendon County
Joseph K. Coffey, Master-in-Equity

---

Opinion No. 28234
Heard June 19, 2024 – Filed August 21, 2024

---

## REVERSED

---

John M. Bleecker Jr., of Law Office of John M. Bleecker, Jr., and Albert Peter Shahid Jr., of Shahid Law Office, LLC, both of Charleston, for Petitioner.

Scott Franklin Talley, of Talley Law Firm, P.A., of Spartanburg, for Respondent Blacktop Ventures, LLC; William H. Johnson, of Johnson, DuRant & Nester, LLC, of Manning, for Respondents Clarendon County

Delinquent Tax Collector and Clarendon County Treasurer.

_____

**JUSTICE FEW:** Alvetta Massenberg appeals the master-in-equity's refusal to set aside a delinquent tax sale of her real property. She argues the sale was invalid because the statutory notice was not posted in a "conspicuous" place as required by subsection 12-51-40(c) of the South Carolina Code (Supp. 2023). The court of appeals affirmed. *Massenberg v. Clarendon Cnty. Treasurer*, Op. No. 2022-UP-410 (S.C. Ct. App. filed Nov. 16, 2022). We find the required notice was not posted in a conspicuous place and reverse.

## I.    Factual and Legal Background

In 1997, Alvetta Massenberg inherited a 2.54-acre tract of undeveloped land located near the rural community of Alcolu in Clarendon County. The densely forested property is shaped like a triangle, with each of the sides being of roughly equal length. The first side faces a two-lane paved secondary road (S-14-49) known as Plowden Mill Road. The lanes of Plowden Mill Road are marked by a double-yellow center line and solid white fog lines on each side. The shoulders are wide and clear of vegetation. The second side faces a one-lane dirt road known as Robert Rees Durant Road. The dirt road has very little shoulder area as the surrounding vegetation crowds the one lane of travel. The third side is not important to this case, except that we will use it to illustrate a point later in the opinion.

Massenberg paid all taxes related to the property through 2015, but she failed to pay the property taxes for 2016. As required by subsection 12-45-180(A) of the South Carolina Code (Supp. 2023), the Clarendon County Treasurer issued a "tax execution" to the Clarendon County Delinquent Tax Collector directing that official to collect $221.27 in delinquent taxes and nonpayment penalties.

The procedure a tax collector must follow to collect delinquent taxes is set forth in detail in section 12-51-40. The tax collector took the first two steps in compliance with the section by (1) sending a "notice of delinquent property taxes" by regular mail to Massenberg's permanent address in Charlotte, North Carolina, and (2) sending another notice by certified mail when the taxes remained unpaid thirty days after the first notice. §§ 12-51-40(a)-(b) (2014). The certified mail notice was

returned undelivered, and the tax collector turned—as the statute requires—to subsection 12-51-40(c).

Subsection 12-51-40(c) requires the tax collector to "take exclusive physical possession of the property . . . by posting a notice at one or more conspicuous places on the premises." To fulfill this statutory responsibility, the tax collector hired a private contractor—Palmetto Posting, Inc. The tax collector gave Palmetto Posting no information, no instruction, and no guidance as to how to—or even whether to—post the notice in a "conspicuous" place. A representative of Palmetto Posting stapled a single "Notice of Levy" to a tree facing the one-lane dirt road. Palmetto Posting then submitted a one-page "Field Report" attached to a copy of the front of the Notice of Levy. There is no evidence in the record the tax collector reviewed the Field Report or otherwise made any effort to determine whether the Notice of Levy had been posted in a conspicuous place.

When the taxes still remained unpaid, the property was advertised for sale at public auction pursuant to subsection 12-51-40(d) (2014) and sold to Blacktop Ventures, LLC. Following the sale, Blacktop paid all outstanding taxes. The treasurer and the tax collector then signed and recorded a tax deed conveying the property to Blacktop.

After Massenberg learned her property had been sold, she filed an action to set aside the tax sale, alleging the tax collector failed to post the Notice of Levy in a conspicuous place as required by subsection 12-51-40(c). At a non-jury trial before the master-in-equity, Massenberg and Clarendon County presented evidence about the location of the Notice of Levy and the nature of the two roads on the two relevant sides of the property.

The testimony presented at the hearing indicates the Notice of Levy was printed on an 8.5 x 11-inch sheet of paper and posted to a tree near the property line facing the one-lane dirt road at about the halfway point of the property line along the dirt road. Aerial photographs of Massenberg's property in the record taken from Google Maps show the tree is indistinguishable from the surrounding woods and the dirt road is crowded by foliage on both sides leaving very little room outside the one lane of travel.

Frank Frierson—Massenberg's uncle who lived nearby—testified that fewer than ten cars would travel the dirt road each day and it is only wide enough for one vehicle to pass at a time. When asked to compare the traffic volume between the paved

road and the dirt road, Frierson responded "it would be 100-to-1 . . . or more," and confirmed there are "no houses on the [dirt] road." Frierson testified, "I'm down there three, four times a day," and, "I didn't see a posting. There could have been a posting, [but] I didn't see it."

David Epperson—the Clarendon County Administrator—testified about a spreadsheet that contains Clarendon County's 2017 work orders for the dirt road. The spreadsheet contains ten entries entitled "Grading and Shaping." Epperson testified that a dirt road being graded and shaped ten times within one year "is roughly above average." He then testified that the frequency of the grading and shaping is "indicative that the road is used quite a bit," and he stated "without traffic on that road, very little maintenance would be necessary." Epperson further testified the dirt road was used as a shortcut to other residential areas.

Maps, overhead photographs of the property, and other testimony indicate that a residential road called Azalea Lane intersects with Plowden Mill Road a short distance from its intersection with the dirt road, directly across Plowden Mill Road from Massenberg's property. Travelers coming from their homes on Azalea Lane toward Plowden Mill Road—the only outlet for Azalea Lane—must stop at the stop sign, at which time they face Massenberg's property directly across Plowden Mill Road.

The master concluded the posting of the Notice of Levy "meets the requirements of South Carolina law for posting property." However, the master did not specifically analyze the question whether the Notice of Levy was posted in a conspicuous place, but merely stated, "[n]o evidence was presented by [Massenberg], who bears the burden in this matter, that the notice of levy . . . was not posted as indicated by Palmetto Posting, Inc." Accordingly, the master refused to set aside the tax sale and declared Blacktop the lawful owner of the property.

Massenberg appealed the master's order, and the court of appeals affirmed. *Massenberg*, 2022-UP-410. We granted Massenberg's petition for a writ of certiorari.

## II.    Analysis

The process for notifying real property owners that their tax payments are delinquent and seizing and selling the property if the taxes remain unpaid is a many-step process

controlled by section 12-51-40. *Hawkins v. Bruno Yacht Sales, Inc.*, 353 S.C. 31, 36, 577 S.E.2d 202, 205 (2003). The purpose of the section is "for the protection of the taxpayer against surprise or the sacrifice of his property." *Leysath v. Leysath*, 209 S.C. 342, 348, 40 S.E.2d 233, 235 (1946). Because of this, the Court has consistently stated, "Tax sales must be conducted in strict compliance with statutory requirements." *In re Ryan Inv. Co.*, 335 S.C. 392, 395, 517 S.E.2d 692, 693 (1999) (citation omitted); *see also Dibble v. Bryant*, 274 S.C. 481, 483, 265 S.E.2d 673, 675 (1980) ("This Court has consistently held the enforcing agencies of government to strict compliance with all the legal requirements surrounding tax sales."). "Failure to give the required notice is a fundamental defect in the tax proceedings which renders the proceedings absolutely void." *Rives v. Bulsa*, 325 S.C. 287, 293, 478 S.E.2d 878, 881 (Ct. App. 1996) (quoting *Donohue v. Ward*, 298 S.C. 75, 83, 378 S.E.2d 261, 265 (Ct. App. 1989)).[1] "Even actual notice is insufficient to uphold a tax sale absent strict compliance with statutory requirements." *King v. James*, 388 S.C. 16, 25, 694 S.E.2d 35, 40 (Ct. App. 2010) (quoting *In re Ryan*, 335 S.C. at 395, 517 S.E.2d at 693).

In this case, the only step of the process at issue is the subsection 12-51-40(c) requirement that the tax collector must "take exclusive physical possession of the property . . . by posting a notice at one or more conspicuous places on the premises." There is no question the Notice of Levy was posted on Massenberg's property, so the narrow question before us is only whether it was posted in a "conspicuous" place. Because an action to set aside a tax sale is an action in equity, we review the factual findings of the trial court with no deference. *King*, 388 S.C. at 24, 694 S.E.2d at 39 (citing *Smith v. Barr*, 375 S.C. 157, 160, 650 S.E.2d 486, 488 (Ct. App. 2007)). As always, we review a trial court's legal conclusions with no deference. *Callawassie Island Members Club, Inc. v. Dennis*, 425 S.C. 193, 198, 821 S.E.2d 667, 669 (2018) (citing *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008)).

We begin by observing that this narrow question before us—whether the notice was posted in a "conspicuous" place—is inherently context dependent. What is a conspicuous place turns on the nature and location of the property, the condition of

---

[1] The issues in *Rives* arose under subsections 12-51-40(a) and (b), not subsection 12-51-40(c). 325 S.C. at 291, 478 S.E.2d at 880. The principle stated in *Rives*, however, applies equally to all notice provisions in section 12-51-40.

the surrounding areas, and, of course, the placement of the notice. There will often be more than one conspicuous place on a parcel of property, and among those places some will be more conspicuous than others. Subsection 12-51-40(c) does not require the notice be posted in the most conspicuous place, only that it be posted "at one or more conspicuous places." Subsection 12-51-40(c) expressly places the responsibility of selecting such a place for posting notice on the county tax collector. Thus, the question before us is not whether we would have posted the notice in a different place, nor whether some other place would have been better, but rather only whether the tax collector posted the notice in a place that was "conspicuous."

The process of selecting a conspicuous place, however, is necessarily comparative. To illustrate this point, we turn back to the third side of Massenberg's property that does not face any road. Nobody would contend that posting the subsection 12-51-40(c) "notice" in the middle of that side of the property would be "conspicuous." But many rural properties do not face any road or public property and notices must be posted in areas that do not face any public access points. There are many rural properties on which no place would be more conspicuous than the middle of the third side of Massenberg's property. Thus, what is clearly not a conspicuous place in this case could be the only conspicuous place in another case.

Determining whether the place of posting notice was "conspicuous" is a judgment call. Subsection 12-51-40(c) requires the county official statutorily charged with the duty of complying with the "strict" requirements of section 12-51-40 to exercise that judgment. We find it critical in this case that the Clarendon County tax collector exercised no judgment whatsoever. Rather, she entrusted the responsibility set forth in subsection 12-51-40(c) to a private contractor, giving that contractor no information, instruction, or guidance before the contractor carried out his work, and no review of his work after he carried it out. There is, in fact, not a shred of evidence that the contractor even knew of the "conspicuous place" requirement.

This lack of focus on the "strict" statutory requirements placed on a tax sale is illustrated by the testimony of the Clarendon County treasurer—who prepared the initial tax execution, though he was not the person directly responsible for posting the notice. He clearly did not know of the conspicuous place requirement, testifying "there is no stipulation in the state law that gives the exact location as to where the tax levy should be," and the notice must simply "be physically placed within the boundaries of the property." This county official's understanding of what the law

requires is patently inconsistent with the subsection 12-51-40(c) requirement that the notice be posted at "one or more conspicuous places on the premises."

Here, the Notice of Levy—a single printer sized sheet of paper—was posted to a tree facing the significantly less-traveled dirt road. The tree is indistinguishable from the surrounding woods, the sides of the dirt road were crowded by unmaintained foliage and shrubbery that restricted a passerby's ability to see the posting at an angle, and nothing was done to draw attention to the area where the notice was posted—or to the notice itself.

When analyzing the location of the Notice of Levy in the context of the general layout of Massenberg's property, it becomes clear that the notice was not posted in a conspicuous place. The property faces two public roads: one is a two-lane lined and paved road and the other is a one-lane dirt road with insufficient width for even two cars to pass at the same time. As previously mentioned, the paved road intersects with Azalea Lane—a residential road—and travelers coming to and from their homes must either slow down to turn onto Azalea Lane or stop at a stop sign directly facing Massenberg's property when turning off of the road. Posting the Notice of Levy in this location would undoubtedly satisfy the requirements of subsection 12-51-40(c). While one could envision advantages to posting the notice on either side, there is a clearly a "front" and a "back" to this property. The contractor—with no explanation—chose to post the Notice of Levy to a tree facing the dirt road on the back side, as if the person was trying to make the posting inconspicuous. Exercising our judgment on de novo review of the findings of the trial court, we find the tax collector failed to post the notice in a conspicuous place as subsection 12-51-40(c) requires. The tax collector thus failed to "take exclusive physical possession of the property" and all subsequent steps in the process of carrying out the tax sale were invalid.

For the reasons explained above, we reverse the court of appeals.

**REVERSED.**

**Acting Justices Donald W. Beatty and J. Mark Hayes, concur. JAMES, J., concurring in result only in a separate opinion, in which KITTREDGE, C.J., concurs.**

**JUSTICE JAMES:** I concur in result but write separately to note my disagreement with some portions of the majority opinion.

I agree with the majority's statement that "the question before us is not whether we would have posted the notice in a different place, nor whether some other place would have been better, but rather only whether the tax collector posted the notice in a place that was 'conspicuous.'" I also agree with the majority's conclusion that subsection 12-51-40(c) does not require the posting to be in the most conspicuous place—it need only be in a conspicuous place. However, the majority then concludes that "[t]he process of selecting a conspicuous place, however, is necessarily comparative." I disagree with that generalization. In my view, the majority creates—perhaps unintentionally—a requirement that the person posting the notice must compare the place of posting with other, perhaps more conspicuous, posting places. I do not interpret the statute to require such a "comparative" approach. If the place of posting was conspicuous, the inquiry should end; it would not matter whether there were other places to post that were more conspicuous.

The majority also concludes,

> Determining whether the place of posting notice was "conspicuous" is a judgment call. Subsection 12-51-40(c) requires the county official statutorily charged with the duty of complying with the "strict" requirements of section 12-51-40 to exercise that judgment. We find it critical in this case that the Clarendon County tax collector exercised no judgment whatsoever. Rather, she entrusted the responsibility set forth in subsection 12-51-40(c) to a private contractor, giving that contractor no information, instruction, or guidance before the contractor carried out his work, and no review of his work after he carried it out. There is, in fact, not a shred of evidence that the contractor even knew of the "conspicuous place" requirement.

I disagree. Nothing in subsection 12-51-40(c) requires the county official to exercise judgment in determining where to post the notice, and nothing requires the official to give instructions or guidance to a private contractor or to review the contractor's work. Nor does the subsection require the county to present any evidence the private contractor knew of the "conspicuous place" requirement. In my view, the majority has created an evidentiary checklist that is not required by the statute. The only requirement is for the notice to be posted in a conspicuous place. To be sure, it would be desirable for the county official or private contractor to receive training

and to exercise proper judgment in selecting the place of posting; however, there is no such requirement in the statute, and we should not write such requirements into the statute. If the county official or private contractor exercised zero judgment as to the place of posting and by pure chance selected a conspicuous place, the statute would be no less satisfied than had the official or contractor exercised the utmost judgment. Likewise, if the contractor posting the notice had no training on where to post a notice, the contractor could still satisfy the statute if, by the luck of the draw, the contractor posted the notice in a conspicuous place.

I would hold the place of posting in this case was not conspicuous and end the analysis there.

**KITTREDGE, C.J., concurs.**