14301

GLYMPH v. SMITH *ET AL.*

(185 S. E., 911)

April, 1935.

*Messrs. Lambert W. Jones,* for appellant Mamie G. Smith, and Joseph C. Hiott, guardian *ad litem,* for appellants Dorothy A. Smith and Jenkins H. Smith,

*Mr. B. V. Chapman,* for respondent,

June 1, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On March 22, 1926, G. Fred Smith, of Newberry County, died intestate, seized in fee and possessed of the 69-acre tract of land around which this controversy revolves. He left surviving him the defendants, his widow, Mamie G. Smith, and his two minor children, Dorothy A. Smith and

Jenkins H. Smith; the latter two being represented in this action by their guardian *ad litem*. In March, 1927, this land was sold by the sheriff at a delinquent tax sale, to enforce the collection of taxes due and unpaid thereon for the years 1925 and 1926, which, together with the costs and penalties, amounted to the sum of $71.13.

A short factual statement, derived from the record, is necessary in order to show how the issues arose in this action. The essential facts are not in dispute.

The main issue to be decided is whether or not the statutory requirements providing for the sale of real estate for delinquent taxes were complied with. The deputy sheriff testified before the Special Referee to whom the cause was referred that he went to the home of the defendants on the land in question, and that he told Mrs. Smith: "I was collecting taxes, and asked her if she could pay them. She told me that she could not pay them, and I told her that I would have to make a levy on it." This is the sole testimony tending to prove that the sheriff "did seize and take exclusive possession" of the property of the defaulting taxpayer's estate, as required in Section 2855, Code 1932. Thereafter, as stated, the land was duly advertised for sale by the sheriff, and sold at public sale in March, 1927. The property was bid in by the plaintiff for the sum of $300.00, and, upon the expiration of twelve months, viz., in March, 1928, the sheriff executed and delivered to the plaintiff a tax deed of the property.

Before the death of G. Fred Smith, he had given three mortgages over the property in question. The first in rank and priority was owned by his brother, Tom H. Smith, the second by the Exchange Bank of Newberry, and the third by the National Bank of Newberry. This latter bank, however, is not a party to this cause. From the purchase money realized from the tax sale the sheriff paid the taxes, and with the balance ($228.87) paid and discharged the first mortgage, held by Tom H. Smith. This mortgage was then

satisfied of record. Some time prior to the tax sale the plaintiff had purchased and acquired by assignment the mortgage held by the Exchange Bank. After he received his deed from the sheriff, the plaintiff attempted to sell the land to three or four persons, all of whom refused to purchase, giving as their reason that the tax deed held by the plaintiff was defective.

In March, 1929, a year after he had received his deed, he entered into an agreement with the defendant Mamie G. Smith to sell her the land for the purchase price of $700-.00. He explains in his testimony that this amount included the $300.00 he had paid at the tax sale and $400.00 due on the mortgage which he had acquired from the Exchange Bank. The plaintiff and Mrs. Smith then met in the office of Mr. Holloway, a lawyer of Newberry, for the purpose of having him draw the necessary papers to complete the transaction. While there, Mr. Holloway told Mr. Glymph, the plaintiff, that "he had better foreclose his mortgage (the Exchange Bank mortgage) instead of taking it (the land) under the tax sale," and that "he did not know for certain what became of the children's interest in the property." As a result of the conference, however, a deed was prepared, which was executed by the plaintiff, purporting to convey the land to Mrs. Smith, and contemporaneously she executed a mortgage to secure the sum of $500.00 and recited therein that she conveyed "All my right, title and interest." The cash portion of the purchase money to be paid was $200.00, but only $160.00 of it was paid at this time. Within a year, however, Mrs. Smith made a further payment on the mortgage indebtedness of $100.00, making the total amount paid by her $260.00.

This action was commenced by the plaintiff in October, 1933, against Mamie G. Smith for the foreclosure of the mortgage referred to. The two minors, Dorothy A. Smith and Jenkins H. Smith, were made parties defendant under the allegation that they claim an interest in the land sought to be foreclosed.

The Special Referee held and reported that all of the legal prerequisites of the tax sale had been complied with, and that the plaintiff, Ernest L. Glymph, acquired good title to the land under the sheriff's tax deed, and was entitled to the foreclosure of his mortgage. Upon exceptions to the report of the Referee being taken to the Circuit Court, the report was affirmed and sustained in every particular, in a formal decree providing for the sale of the property. All of the defendants have appealed to this Court from the Circuit decree, raising several issues, which will now be discussed.

The defendants launch a direct attack upon the regularity of the sheriff's sale under which this land was sold for delinquent taxes, and challenge the validity of the deed made by him to the plaintiff.

It is a well-established rule that one holding a sheriff's deed for land purchased at a delinquent land sale for the nonpayment of taxes has *prima facie* good title, but this presumption may be rebutted by proof of the noncompliance with the necessary legal prerequisites of the sale. See Section 2859, Code 1932, and cases cited and annotated thereunder.

Obviously this legal presumption has been rebutted and overcome in this case by the testimony of the deputy sheriff to which we have referred.

Section 2855, Code 1932, provides that "under and by virtue of said warrant or execution, the sheriff shall seize and take exclusive possession of * * * the defaulting taxpayer's estate," etc.

What the deputy sheriff actually did, as disclosed by the testimony, lacks much of complying with this statutory requirement.

Commenting upon this section of the Code, Mr Justice Woods, in the case of *Dickson v. Burckmyer,* 67 S. C., 526, 46 S. E., 343, 348, in an opinion unanimously concurred in, said that "the requirement [to seize and take exclusive

possession], is one which greatly concerns the defaulting owner ·of the land, for the seizure and taking possession by the sheriff is a notorious act, which tends to give the defaulter and the community notice of the intended sale, and thus prevent a sacrifice of the property."

This case was later cited with approval in the case of *Barrineau v. Stevens,* 75 S. C., 252, 55 S. E., 309.

We do not understand that the rule announced and the reasoning employed by the Court in *Dickson v. Burckmyer, supra,* and *Barrineau v. Stevens, supra,* contemplates that the owner of a tract of land upon which taxes are due and unpaid must be actually dispossessed and ousted by the sheriff, as a necessary legal prerequisite under the statute, prior to the advertisement of the sale of the property. The language used in the act, to the effect that the sheriff shall "seize and take exclusive possession" of the property, is not reasonably susceptible of this narrow and literal interpretation, nor is such construction necessary to accomplish the purposes sought by the statute. The law must be given that practical construction which jibes with common sense without detracting from its efficacy.

It is clear that "exclusive possession" under this tax statute (Section 2855), cannot be construed to carry the same meaning as does the phrase "exclusive possession," so often referred to in establishing title to land by adverse possession. In establishing title by adverse possession, it is necessary that such possession be actual, continuous, open and notorious, exclusive and hostile; and such possession, to constitute the basis of title by adverse possession, must not be held in common with the rightful owner. In such a case there can be no disseisin unless the rightful owner is altogether deprived of possession.

The possession by a sheriff of the land of a defaulting taxpayer when he complies with the legal prerequisites leading up to a tax sale is an altogether different thing. It does not look to the establishment of title to the defaulting tax-

payer's real estate by adverse possession. The sheriff asserts no claim to ownership. It is sufficient for the sheriff or his regularly appointed deputy to enter upon such real estate, armed with the tax execution, exhibit it, and notify the owner that under the authority of the execution he has seized and taken possession of the land in his official capacity. This step constitutes the levy, and gives to the sheriff that lawful possession contemplated by the statute. The mere occupancy of the land thereafter by the owner, until redemption or consummated sale, is not in derogation of the sheriff's possession, but is subordinate thereto. We announce here no hard and fast rule or procedure because circumstances alter cases. The rule stated, however, is applicable to the facts in this case.

In the instant case the action of the deputy sheriff was entirely too informal. He testified that he merely told Mrs. Smith that he would have to levy; he said nothing about taking possession, and in no sense did he take possession. Mrs. Smith testified that she did not know her property was to be sold until the sale actually took place. It follows that the tax sale of this property was invalid.

It is likewise clear that the deed of the sheriff to the plaintiff is null and void, and that the plaintiff acquired absolutely nothing thereunder. This tax deed being invalid, the plaintiff conveyed nothing by his deed to the defendant, Mamie G. Smith. The deed from the plaintiff to Mamie G. Smith being a nullity, the consideration for the mortgage executed by Mamie G. Smith falls to the ground, and it necessarily follows that the plaintiff acquired no interest in or lien upon the property under this mortgage which he is now attempting to foreclose in this action.

The plaintiff contends that the two-year Statute of Limitation (Section 2859, Code 1932), which provides that "no action for the recovery of land sold by the sheriff under the provisions of this article, or for the recovery of the possession thereof, shall be maintained un-

less brought within two years from the date of said sale," is applicable here.

Under previous decisions of this Court and under the facts in this case this plea is not available to the plaintiff. It was held in *Gardner v. Reedy,* 62 S. C., 503, 40 S. E., 947, that the two-year limitation provided for in this section does not begin to run, where the sheriff did not take possession of the land before tax sale, until the purchaser is put in possession by the sheriff.

As we have already shown, the sheriff never took possession of the land before the tax sale, nor did he ever place the plaintiff in possession of it following the execution of the tax deed to him. It is undisputed, and admitted by the plaintiff himself, that he never had possession; that the defendants remained upon the land during all of this period, and that they are still there, and that their possession has been continuous and uninterrupted. The landowner could not bring an action attacking the tax deed until there was on the land a person withholding possession from him. As was said by the Court in *Suber v. Chandler,* 18 S. C., 526, 532, in order "to give currency to the statute there must be a plaintiff who can sue and a defendant who can be sued."

The statute does not bar either the ·defendant Mamie G. Smith or the two infant defendants. This is true, not only for the reasons hereinabove given, but the statute, as was held in *Jones v. Boykin,* 70 S. C., 309, 49 S. E., 877, is affected by the disability of infancy, and does not run against infants.

While this action must be dismissed for the reason that the mortgage sought to be foreclosed, given by the defendant Mamie G. Smith to the plaintiff, is null and void for failure of consideration, the plaintiff must still be held to be the owner of the mortgage assigned to him by the Exchange Bank of Newberry.

The Court, in this opinion, can go no further than to decide the specific issues presented by the record in the case. The opinion purports to do no more than that.

All exceptions have been considered, although not specifically referred to.

It is the judgment of this Court that the judgment of the lower Court be reversed, and that the complaint be dismissed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.