## 21190

W. W. DIBBLE and Red Oak Lands, Inc., Appellants, v. W. L. BRYANT, Virginia Bryant, Harold F. Norman and Brad Purinton, Respondents.

(265 S. E. (2d) 673)

*Hyman, Morgan, Brown, Jeffords & Rushton,* Florence, and *Cooper, Bowen, Beard & Smoot,* Camden, *for appellants.*

*William H. Seals,* and *Charles T. Speth,* Marion, *for respondents.*

April 9, 1980.

GREGORY, Justice:

This is an action to quiet title. Appellants base their claim of ownership to the property in question on a tax deed. Respondent W. L. Bryant is a grantee in the record chain of title to the premises. The appeal is from an order declaring the tax deed void and of no effect. We affirm.

On or about February 22, 1974, the Marion County Tax Collector mailed Notice of Levy on the subject property to one Bobby Lee Sweat for unpaid property taxes in the amount of $87.76 for the 1971 tax year. While Sweat was the record owner for purposes of that tax year, Linda Faye Christmas held title to the property several years later when the Notice of Levy was mailed to Sweat.

Following notice of levy, the tax collector on May 7, 1974, went upon the then-abandoned premises owned by Christmas and posted a Notice of Sale in the name of Bobby Lee Sweat for the delinquent 1971 taxes. The property was auctioned in Sweat's name at a tax sale on July 1, 1974 and sold to appellant Dibble for $410.00. Dibble received the tax deed in July of 1975, after the statutory one-year redemption period [1] had run. He conveyed his interest in the property to appellant Red Oak Lands, Inc., in January of 1978.

Respondent Bryant traces his interest through the record chain of title. In June of 1970 Sweat purchased the lot and built a house thereon under a federal program with financing guaranteed by the Department of Housing and Urban

---

[1] See Sections 12-49-460 and 12-49-520, Code of Laws of South Carolina (1976).

Development (HUD). HUD later foreclosed the Sweat mortgage and received a deed of foreclosure for the property on March 6, 1971. The house and lot were subsequently conveyed to Linda Faye Christmas in October of 1973, and once again through foreclosure proceedings, HUD regained the property in August of 1974. Several months later the property was sold free of mortgage to Jonnie A. Shannon, who in turn conveyed the house and lot to respondent Bryant in January of 1975.[2]

Thus, at the time of levy and sale by the tax collector, the true owner of the property was Christmas, whose ownership interest was subject to the HUD mortgage.

The lower court ruled the actions of the tax collector were insufficient to effectuate the notice of levy to the rightful owner and mortgageholder of the premises or to put the tax collector in exclusive possession of the premises. This failure to comply with the levy requirements of notice and possession preliminary to a tax sale was the lower court's basis for invalidating the tax deed.

The procedure for the enforced collection of taxes by execution, levy and sale is set forth in Section 12-49-410, *et seq.,* Code of Laws of South Carolina (1976). An execution, signed by the county treasurer and issued against the defaulting taxpayer, commands the county sheriff or tax collector "to levy such execution by distress and sale." § 12-49-410. It is further provided that the executing officer "under and by virtue" of the execution shall "seize and take exclusive possession" of the premises. § 12-49-460(1). It is the interpretation of these requirements which demands we invalidate the tax title of appellants.

This Court has consistently held the enforcing agencies of government to strict compliance with all the legal requirements surrounding tax sales. *Dickson v. Burckmyer,* 67 S. C. 526, 46 S. E. 343 (1903); *Osborne v. Vallentine,* 196

---

[2] The interests of the other named respondents are derivative of Bryant's claim of title, and have no bearing on this appeal.

S. C. 90, 12 S. E. (2d) 856 (1941); *Aldridge v. Rutledge,* 269 S. C. 475, 238 S. E. (2d) 165 (1977).

The sound view is that all requirements of the law leading up to tax sales which are intended for the protection of the taxpayer against surprise or the sacrifice of his property are to be regarded mandatory, and are to be strictly enforced. *Dickson v. Burckmyer, supra,* 46 S. E. at 345.

In the case of *Glymph v. Smith,* 180 S. C. 382, 185 S. E. 911, 105 A. L. R. 631 (1936), non-compliance with the levy requirements resulted in the setting aside of a tax deed:

It is a well-established rule that one holding a sheriff's deed for land purchased at a delinquent land sale for the non-payment of taxes has *prima facie* good title, but this presumption may be rebutted by proof of the noncompliance with the necessary legal prerequisites of the sale. . . . 185 S. E. at 913.

In *Osborne v. Vallentine, supra,* and most recently in *Aldridge v. Rutledge, supra,* non-compliance by failure to levy and sell the property in the name of the real owner demanded the invalidation of tax deeds. In *Osborne,* we stated:

It is a well-established principle that due process of law requires some sort of notice to a landowner before he is deprived of his property. It is an anomalous situation that the statutes of this State require actual notice to a mortgagee of land about to be sold for taxes, and make no such requirement for actual notice to the owner. It would appear that the constructive notice provided by the levy, advertisement and sale in the owner's name is deemed sufficient. Such notice to the owner, as required by the tax sale statutes, being constructive rather than actual, the court requires strict compliance therewith.

12 S. E. (2d) at 858.

The Court in *Glymph* set forth the actions of the levying officer necessary in that case for compliance with the statutory language as follows:

It is sufficient for the sheriff or his regularly appointed deputy to enter upon such real estate, armed with the tax execution, exhibit it, and *notify the owner* that under the authority of the execution he has seized and taken possession of the land in his official capacity. *This step constitutes the levy, and gives to the sheriff that lawful possession contemplated by the statute. . . .* (Emphasis added.)
185 S. E. at 913.

While the circumstances of this case differ from *Glymph* in that the property here levied on was abandoned, whereas the premises in the former case were occupied by the owner at the time of levy, we find the requirements of notice to the owner and possession by the executing officer to be of universal application, notwithstanding the particular circumstances of a case. These requirements are intimately connected. Commenting on the statutory language directing the sheriff to "seize and take exclusive possession" of the property, the *Dickson* Court noted:

The requirement is one which greatly concerns the defaulting owner of the land, for the seizure and taking possession by the sheriff is a *notorious act, which tends to give* the defaulter and the community notice of the intended sale, and thus prevent a sacrifice of the property.
46 S. E. at 348.

In the case at bar, we must determine whether the actions of the Marion County Tax Collector strictly comply with the levy requirements of notice and possession in light of the above considerations. We conclude, as did the lower court, that those actions did not so as to mandate setting aside the tax sale and declaring the tax deed null and void. The presumptive good title of appellant Dibble is overcome by the evidence. The tax collector stated under oath:

I went upon the premises situate northeast of Marion on Highway No. 41A; and at that time, I posted, by tacking, a Notice of Sale of the property in the name of Bobby Lee Sweat for the 1971 taxes; that to the best of my recollection, on May 7, 1974, these premises were unoccupied; that the only act performed by me as Tax Collector upon the premises on that date was the tacking of the Notice to the front of the building; that I did not have any keys delivered to me for this house, that I did not take into possession any grass or dirt from this property; that I did not declare verbally that I was seizing and taking exclusive possession of this property on behalf of Marion County; that I did not enter upon the premises at any time after May 7, 1974, and I did not have exclusive possession of this property at any time from May 7, 1974, to July 24, 1975; that on Sales Day in July, 1974, I sold the premises as stated in my previous Affidavit; that the Notice of Sale as printed in *The Marion Star* contained only the name of "Bobby Lee Sweat, 1 lot, 1 building"; that no more definite description of the said premises was contained in the advertisement . . ..

I did not, as Tax Collector, notify all mortgage holders of record within ten (10) years prior to the seizure of this property by me as Tax Collector, of the pending delivery of title to the real estate as required by Section 12-49-300 of the 1976 Code of Laws of the State of South Carolina.

We hold that the sole act of tacking a notice of sale in the name of the prior owner to the front of an abandoned building on property subject to an outstanding mortgage lien fails to give reasonable notice to the parties in interest as required by due process and statute. *Osborne, supra;* see Sections 12-49-410 and 12-49-460, Code of Laws of South Carolina (1976). The tax collector by her own admission did not take the exclusive possession of the premises required by law, nor were the landowner or mortgagee afforded sufficient notice so that they might prevent a sacrifice of the property. Thus, the levy was not in strict

compliance with the law and the tax sale must be set aside. *Glymph, supra.*

Appellants, who initiated this action, raise the two-year statute of limitations relating to actions for the recovery of land sold at tax sales as a bar to any claim respondent may have to the property. See Section 12-49-570, Code of Laws of South Carolina (1976), which provides that "[n]o action for . . . recovery . . . shall be maintained unless brought within two years from the date of such [tax] sale." Here, respondents are defending an action brought by appellants more than two years after receiving the tax deed.

It is our view that § 12-49-570 was not intended as a bar against one in possession of the property from asserting a claim of ownership thereto in defense of an action brought by the purchaser at a tax sale more than two years after receiving the tax deed. This statute was intended to bar a defaulting and ousted taxpayer from maintaining an action to defeat the title of the tax sale purchaser and recover the land if brought more than two years from the date the purchaser came into possession. *Scott v. Boyle,* 271 S. C. 252, 246 S. E. (2d) 887 (1978); *Leysath v. Leysath,* 209 S. C. 342, 40 S. E. (2d) 233 (1946). In the case of *Gardner v. Reedy,* 62 S. C. 503, 40 S. E. 947 (1902), we stated:

The statute did not intend to bar the taxpayer's right until he had two years within which he could bring his action. He could not bring his action until there was a person on the land withholding possession from him.
40 S. E. at 947-48.

Respondent Bryant has never been ousted of possession, nor was he the defaulting taxpayer.

To deny the possessor a claim of rightful ownership would be to deny him any defense, and would enable a purchaser at a tax sale to circumvent the valid legal remedies available to the defendant in possession of the property by merely

waiting more than two years to bring his action to oust the defendant.

Accordingly, we hold the actions of the tax collector, being insufficient to satisfy the levy requirements of notice and possession preceding the tax sale, invalidate the tax deed to appellant Dibble and any claim he or his successors or assigns may have to the property; and that § 12-49-570 is inapplicable to this case and therefore imposes no bar to respondent's defense of this action.

Affirmed.

LEWIS, C. J., LITTLEJOHN and NESS, JJ., and WALTER T. Cox, III, Acting Associate Justice, concur.