Louise H. BAKER, Plaintiff,

v.

Cindy C. DENTON, Karla Denton, Dennis Massengail, Gina Massengail, Branch Banking and Trust Company, and Myers Park Mortgage, Inc., Defendants.

Dennis Massengail and Gina Massengail, Third–Party Plaintiffs,

v.

United States of America, County of Georgetown, Loretta D. Washington Cooper, and The O'Brien Law Firm Co., L.P.A., Inc., Third–Party Defendants.

The O'Brien Law Firm Co., L.P.A., Inc., Fourth–Party Plaintiff,

v.

D & D Title Search Services, LLC, a/k/a D & D Title Search Services; and Harrington, Moran, Barksdale, Inc.; Fourth–Party Defendants.

C.A. No. 2:13–cv–00370–PMD.

United States District Court, D. South Carolina, Charleston Division.

Signed June 3, 2014.

Charles Tucker Smith, John Pyatt Inactive Grimes, Grimes and Smith, Georgetown, SC, for Plaintiff.

Alwyn Taylor Silver, Ronald James Talbert, Ronald J. Talbert Law Office, Andrews, SC, Daniel Quigley Inactiv Orvin, Matthew E. Tillman, Womble Carlyle Sandridge and Rice, Charleston, SC, for Third–Party Plaintiffs/Defendants.

J. Bennett Crites, III, Collins and Lacy, Charleston, SC, for Fourth–Party Plaintiff.

David J. Mills, McNair Law Firm, J. Bennett Crites, III, Collins and Lacy, Charleston, SC, for Third–Party Defendants.

Tucker S. Player, Player Law Firm, Columbia, SC, Christopher M. Hinnant, Cranfill Sumner and Hartzog, Wilmington, NC, Robert Marc Rubin, Cranfill Sumner and Hartzog, Charlotte, NC, for Fourth–Party Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court upon Defendants and Third–Party Plaintiffs Dennis Massengail and Gina Massengail's (collectively, "the Massengails") Motion for Summary Judgment ("Motion") seeking to set aside a tax sale. Third–Party Defendants United States of America ("United States") and The O'Brien Law Firm Co., L.P.A., Inc. ("The O'Brien Law Firm"), as well as Fourth–Party Defendants D & D

Title Search Services, LLC ("D & D"), and Harrington Moran Barksdale Inc. ("HMBI"), have joined the Massengails' Motion. Plaintiff Louise H. Baker ("Plaintiff") filed a Memorandum in Opposition to the Massengails' Motion, and Third–Party Defendants County of Georgetown ("Georgetown County") and Loretta D. Washington Cooper ("Tax Collector") have joined Plaintiff's Memorandum. The Massengails filed a Reply. For the reasons set forth below, the Court grants the Massengails' Motion.

## BACKGROUND

This lawsuit arises out of a tax sale conducted by the Georgetown County Treasurer and Tax Collector. In 2008, Defendants Cindy C. Denton and Karla Denton (collectively, "the Dentons") owned 13 Blackwood Trail, Pawleys Island, South Carolina (the "Property"). The Dentons failed to pay the 2008 water and sewer assessments on their Property and failed to pay their mortgage lender, Security Atlantic Mortgage Co., Inc.

On March 17, 2009, the Treasurer issued a tax execution directing that the Property be seized, levied upon, and sold for nonpayment of the 2008 water and sewer assessments. On May 1, 2009, the Tax Collector sent notice of the tax execution to the Dentons by certified mail. On October 7, 2009, the Tax Collector posted notice of the tax execution on the Property. On October 14, October 21, and October 28, 2009, the Tax Collector published notice in the newspaper that the Property would be sold at a delinquent tax sale. On November 2, 2009, the Tax Collector sold the Property at public outcry to pay the 2008 water and sewer assessments. Plaintiff was the high bidder and complied with her bid.

While the Tax Collector was enforcing the lien of the 2008 water and sewer as-

sessments, the mortgage on the Property was being foreclosed. On July 21, 2009, a mortgage foreclosure action was instituted against the Dentons. On August 11, 2009, the mortgage was assigned from Security Atlantic Mortgage Co., Inc., to BAC Home Loans Servicing, L.P. ("BAC"). On March 9, 2010, a foreclosure hearing was held, judgment was rendered, and the Property was ordered sold subject to taxes and assessments.

BAC was the successful bidder at the foreclosure sale and assigned its bid to the Secretary of Housing and Urban Development ("HUD"). On April 16, 2010, the Master in Equity's Foreclosure Deed was issued to HUD. On April 29, 2010, BAC instructed the Tax Collector that the Property had been conveyed to HUD and that all future tax billings should be directed to HUD's servicing agent, HMBI. The Property was not redeemed from the delinquent tax sale during the mortgage foreclosure.

On September 30, 2010, the Tax Collector sent final notice of the right of redemption by certified mail to the Dentons, HUD, and HMBI. On October 22, 2010, HUD conveyed the Property to the Massengails, who had purchased the Property and mortgaged it to Myers Park Mortgage, Inc. The O'Brien Law Firm conducted the closing. On November 3, 2010, the deed from HUD to the Massengails was filed in the Georgetown County Register of Deeds Office. Also on November 3, 2010, the right of redemption from the delinquent tax sale expired. The Property was not redeemed from the delinquent tax sale during the sale from HUD to the Massengails. The Tax Collector conveyed the Property to Plaintiff by a tax deed dated January 31, 2011.

On October 10, 2012, Plaintiff commenced this action in the Court of Common Pleas for Georgetown County, South

Carolina. In her Complaint, Plaintiff seeks an order quieting title in Plaintiff; declaring that Defendants no longer have any right, title, interest, or equity in the Property; and rendering such other and further relief as may be just and proper. The Dentons and Myers Park Mortgage, Inc., failed to answer the Complaint, and the Clerk of Court of Georgetown County entered default against them. Branch Banking and Trust Company responded that it did not object to quieting title and would not participate in the litigation.

The Massengails answered the Complaint and asserted a counterclaim and third-party claim against Georgetown County and the Tax Collector to set aside the tax sale. Specifically, they seek an order finding the tax sale and tax deed void, quieting title to the Property in the Massengails, and declaring that Plaintiff has no right, title, interest, or other ownership of the Property. The Massengails also asserted various third-party negligence and contract claims against the United States and a malpractice claim against The O'Brien Law Firm. The United States removed the case to this Court on February 8, 2013.

The Massengails now seek an order of summary judgment granting their claim to set aside the tax sale and tax deed. The Motion has been fully briefed and is ripe for judgment.

### JURISDICTION

This Court has original subject matter jurisdiction over this matter based on 28 U.S.C. § 1346(b)(1), which provides that the district courts have exclusive jurisdiction over civil actions on claims against the United States for money damages for injury caused by the negligent act or omission of any employee of the Government while acting within the scope of his employment.

### STANDARD OF REVIEW

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed.R.Civ.P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence must be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### ANALYSIS

#### I. General Principles of South Carolina Tax Sale Law

Under South Carolina law, tax sales are governed by S.C.Code. Ann. § 12–51–40 *et seq.* Once a county treasurer issues an execution against a defaulting taxpayer, the official county tax collector must take a number of mandatory actions to levy the execution by distress and sale of the defaulting taxpayer's property. S.C.Code. Ann. § 12–51–40. First, the tax collector must "mail a notice of delinquent property taxes, penalties, assessments, and costs to the defaulting taxpayer and to a grantee of record of the property." *Id.* § 12–51–40(a) (specifying requirements of the notice). "If the taxes remain unpaid after thirty days from the date of mailing of the delin-

quent notice," the tax collector must take exclusive possession of the real property by "mailing a notice of delinquent property taxes, assessments, penalties, and costs to the defaulting taxpayer and any grantee of record of the property at the address shown on the tax receipt or to an address of which the officer has actual knowledge, by 'certified mail, return receipt requested-restricted delivery.'" *Id.* § 12–51–40(b) (specifying requirements of the no-, tice and explaining that the return receipt of the certified mail notice is equivalent to "levying by distress"). If the certified mail notice is returned, the tax collector must take exclusive physical possession of the real property "by posting a notice at one or more conspicuous places on the premises, ... reading: 'Seized by person officially charged with the collection of delinquent taxes of (name of political subdivision) to be sold for delinquent taxes.'" *Id.* § 12–51–40(c) (explaining that "the posting of the notice is equivalent to levying by distress, seizing, and taking exclusive possession" of the property).

"Once a constructive 'levy by distress' has been accomplished, the statute requires the tax collector to 'advertise[ ] the property for sale at public auction.'" *Hawkins v. Bruno Yacht Sales, Inc.,* 342 S.C. 352, 536 S.E.2d 698, 703 (2000) (quoting S.C.Code. Ann. § 12–51–40(d)), *aff'd as modified,* 353 S.C. 31, 577 S.E.2d 202 (2003). The advertisement must comply with the following requirements: (1) "be in a newspaper of general circulation within the county or municipality"; (2) be entitled "Delinquent Tax Sale"; (3) "include the delinquent taxpayer's name and the description of the property"; and (4) "be published once a week before the legal sales date for three consecutive weeks." S.C.Code Ann. § 12–51–40(d). If the taxes, assessments, penalties, and costs are not paid before the advertised sales date, *id.* § 12–51–40(b), the tax collector must

sell the property at public auction on the advertised date. *Id.* § 12–51–50.

■■■■ "Tax sales must be conducted in strict compliance with statutory requirements." *In re Ryan Inv. Co., Inc.,* 335 S.C. 392, 517 S.E.2d 692, 693 (1999). Moreover, "failure to give the required notice of a tax sale is a fundamental defect in the tax sale proceedings that renders the proceedings absolutely void." *Hawkins v. Bruno Yacht Sales, Inc.,* 353 S.C. 31, 577 S.E.2d 202, 205 (2003). "[T]he fact that the defaulting taxpayer has actual notice of the impending tax sale 'is *insufficient* to uphold a tax sale absent strict compliance with statutory requirements.'" *Id.* (quoting *Ryan,* 517 S.E.2d at 693). Accordingly, South Carolina courts will set aside sales where public officials have failed to strictly comply with the requirements of § 12–51–40. *Tanner v. Florence Cnty. Treasurer,* 336 S.C. 552, 521 S.E.2d 153, 159 (1999).

■■■■ Under South Carolina law, the "cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hawkins,* 577 S.E.2d at 207. Moreover, where "a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning." *Wade v. Berkeley Cnty.,* 348 S.C. 224, 559 S.E.2d 586, 588 (2002) (quotation marks omitted). "On the other hand, where a statute is ambiguous, the Court must construe the terms of the statute." *Id.*

## II. *Whether the tax sale advertisement violated § 12–51–40(d)*

■■■■ The Massengails argue that the tax sale should be set aside because the Tax Collector omitted the name of one of the

delinquent taxpayers from the newspaper advertisements of the tax sale. Specifically, the Tax Collector did not include the name of Karla Denton in the advertisement on any of the three publication dates. Instead, in each advertisement Cindy Denton is listed twice as the taxpayer for the Property. The Massengails maintain that because the Tax Collector failed to list Karla Denton as a delinquent taxpayer, the tax sale is void.

Plaintiff responds that the Massengails have cited no authority to support their argument that the phrase "the delinquent taxpayer's name" should be interpreted to require that the names of all owners of the property be published in the advertisement. According to Plaintiff, a delinquent taxpayer is not necessarily the same person as the owner of the property, and an interpretation requiring publication of the names of all owners of a property would result in substantial costs to taxpayers. Plaintiff argues that if the legislature had intended to require that the names of all owners of the property be published in the advertisement, the legislature would have plainly stated that requirement in the subsection. Plaintiff maintains that the Tax Collector complied with § 12–51–40(d) by publishing Cindy C. Denton's name as the delinquent taxpayer in the Delinquent Tax Sale notice.

Plaintiff's argument that the name of only one delinquent taxpayer is required by the statute finds support neither in the statutory language nor in controlling case law. Pursuant to the statute, the newspaper advertisement "must include *the* delinquent taxpayer's name and the description of the property." S.C.Code Ann. § 12–51–40(d) (emphasis added). If the legislature had intended to require the Tax Collector to advertise the name of only one delinquent taxpayer per property, as Plaintiff suggests, then the legislature could have specified that the advertisement include "a" or "one" or "at least one" delinquent taxpayer's name. Instead, the legislature requires that the advertisement include "the" delinquent taxpayer's name, which suggests that the advertisement must include the names of all of the delinquent taxpayers for each property. Indeed, the Supreme Court of South Carolina reached a similar conclusion upon interpreting an earlier version of the tax sale statute. In *Osborne v. Vallentine*, 196 S.C. 90, 12 S.E.2d 856 (1941), the supreme court considered a case where an advertisement for a tax sale named the deceased testatrix as the owner of the property, even though at the time of the advertisement the owners of the property were the devisees. The statute governing tax sales required the advertisement to specify, *inter alia*, "the name of the owner of the property." *Id.* at 858. The supreme court held that the advertisement "should have been made in the names of the devisees, the owners at the time thereof." *Id.* Thus, the supreme court interpreted "the name of the owner" to mean the names of all of the owners. Accordingly, this Court concludes that the language "the delinquent taxpayer's name" in § 12–51–40(d) means the names of all of the delinquent taxpayers.

■ "All requirements of law leading up to tax sales are intended for the protection of the taxpayer against surprise or the sacrifice of his property and are regarded as mandatory and are strictly enforced." *Tanner,* 521 S.E.2d at 158–59 (citing *Dibble v. Bryant,* 274 S.C. 481, 265 S.E.2d 673 (1980)). The publication of a taxpayer's name in a notice of tax sale clearly is aimed at protecting the taxpayer against surprise or the sacrifice of her property. In this case, it is undisputed that in each of the three advertisements for the tax sale, the Tax Collector listed Cindy C. Denton twice as the taxpayer for the Property but

never listed Karla Denton as a taxpayer. Further, Plaintiff does not dispute that Karla Denton was a delinquent taxpayer for the Property. *See* Tax Sale Deed 1, ECF 62-7 (providing that the "name of the defaulting taxpayer(s) were Cindy C Denton, Karla Denton and The Secretary of Housing and Urban Development"[1]); Pl.'s Resp. Mem. 17, ECF 70 (arguing that the "tax deed correctly lists the defaulting taxpayer[s] as Cindy C. Denton, Karla Denton and The Secretary of Housing and Urban Development"); Deputy Tax Collector's Aff. 6, ECF 70-4 (averring that the tax deed correctly lists Karla Denton as a defaulting taxpayer); *see also* Feb. 11, 2011 Tax Collector Ltr. to Pl., ECF 72-1 (in a letter regarding the preparation of the tax deed, including the following subject heading: "DEFAULTING TAXPAY-ER: DENTON CINDY C DENTON KARLA"). Thus, the undisputed facts demonstrate that the Tax Collector failed to strictly comply with the requirements of § 12–51–40(d) when she omitted delinquent taxpayer Karla Denton's name in the advertisement. Accordingly, the Court concludes that the tax sale is void and must be set aside.[2] *See Tanner*, 521 S.E.2d at 159.

### III. *Whether the Notice of Levy posted by the Tax Collector violated § 12–51–40(c)*

The Massengails also argue that the tax sale should be set aside because the Notice of Levy posted by the Tax Collector on the Property did not strictly comply with the requirements of § 12–51–40(c). Specifically, the Notice did not include the following language appearing in quotation marks in the statute: "Seized by person officially charged with the collection of delinquent taxes of (name of political subdivision) to be sold for delinquent taxes." S.C.Code. Ann. § 12–51–40(c). Plaintiff responds that the Notice of Levy not only provided all of the information required by the statute but also included additional information. Plaintiff argues that the legislature did not intend for the Notice to consist of the exact language within the quotation marks, as evidenced by the fact that the portion in parentheses is clearly meant to be modified. Plaintiff concludes that even though the Notice did not contain the exact quoted language from § 12–51–40(c), the Tax Collector complied with the statute by including all of the required information in the Notice of Levy.

Section 12–51–40(c) provides, in pertinent part:

> If the "certified mail" notice has been returned, [the tax collector shall] take exclusive physical possession of the property against which the taxes, assessments, penalties, and costs were assessed **by posting a notice** at one or more conspicuous places on the premises, in the case of real estate, **reading: "Seized by person officially charged**

---

1. The Parties dispute whether HUD was a defaulting taxpayer. *See* Mot. Summ. J. 9, ECF 62; Pl.'s Resp. Mem. 16–17, ECF 70. For purposes of this Order, however, this dispute is immaterial. Accordingly, the Court makes no finding with respect to HUD's alleged status as a defaulting taxpayer.

2. For purposes of this Order, the Court need not consider Plaintiff's arguments regarding the distinction between a delinquent taxpayer of a property and the owner of a property. As explained above, the failure to include Karla Denton's name in the tax sale advertisement violated § 12–51–40(d) because the statute requires publication of all taxpayers' names and it is undisputed that Karla Denton was a delinquent taxpayer for the Property. Accordingly, the Court does not decide whether Karla Denton's name should have been published in the tax sale advertisement for the additional reason that she was an owner of the Property.

with the collection of delinquent taxes of (name of political subdivision) to be sold for delinquent taxes", the posting of the notice is equivalent to levying by distress, seizing, and taking exclusive possession of it. . . .

S.C.Code Ann. § 12–51–40(c) (emphasis added). The Court concludes that this language is plain and unambiguous and conveys that the legislature clearly intended for the notice to contain the quoted language as it appears in the statute. A statute should be construed so that "no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous." *State v. Sweat*, 386 S.C. 339, 688 S.E.2d 569, 575 (2010) (quotation marks omitted). By including the language in quotation marks and setting off the quoted portion with "reading" followed by a colon, the legislature makes clear that that the exact quoted language is to be included in the posted notice. Moreover, by setting off the "name of political subdivision" portion in parentheses, the legislature clearly conveys that the parenthetical language should be replaced by the actual name of the political subdivision that seeks to collect delinquent taxes. Unlike in other subsections of the statute, where the legislature generally describes the notice requirements without using quotation marks,[3] in § 12–51–40(c) the legislature uses a colon, quotation marks, and parentheses to describe the requirements for the posted notice. For the Court to find, as Plaintiff urges, that § 12–51–40(c) does not require verbatim recitation of the quoted language, it must construe the statute to render superfluous the word "reading," the colon, and the quotation marks. This the Court will not do.

■ The Notice of Levy failed to include the language quoted in and required by § 12–51–40(c). Pursuant to the clear language of the statute, the Notice should have contained the following language: "Seized by person officially charged with the collection of delinquent taxes of the County of Georgetown to be sold for delinquent taxes."[4] South Carolina courts require strict compliance with the statutory requirements for tax sales and will set aside sales where public officials have failed to strictly comply with those requirements. Because the Tax Collector did not strictly comply with the language requirements for the Notice of Levy, the tax sale should be set aside.[5]

---

**3.** *See* S.C.Code. Ann. § 12–51–40(a) ("The notice must specify that if the taxes, penalties, assessments, and costs are not paid, the property must be advertised and sold to satisfy the delinquency."); *Id.* § 12–51–40(b) ("All delinquent notices shall specify that if the taxes, assessments, penalties, and costs are not paid before a subsequent sales date, the property must be duly advertised and sold for delinquent property taxes, assessments, penalties, and costs.").

**4.** The Court notes that, contrary to Plaintiff's argument that the Notice of Levy contained all of the information required by § 12–51–40(c), the Notice never states that the person who seized the property is officially charged with the collection of delinquent taxes. The Notice includes the Tax Collector's name, title, and contact information, but there is nothing explaining to the reader that she is officially charged with the collection of delinquent taxes. *See* Notice of Levy, ECF 62–1. Therefore, even if the Notice did not have to contain a verbatim recitation of the quoted language, the Court would find that the Notice of Levy failed to comply with the statute.

**5.** "Each failure to comply with the requisite statutory mandate, in and of itself, is sufficient to void a tax sale." *Hawkins*, 536 S.E.2d at 704. The Court already has held that Georgetown County and the Tax Collector did not comply with two separate provisions of § 12–51–40 in that they failed (1) to list Karla Denton as a delinquent taxpayer in the tax sale advertisement and (2) to include the required language in the posted Notice of Levy. Accordingly, the Court declines to ad-

## CONCLUSION

Based on the foregoing, it is **OR-DERED** that the Massengails' Motion for Summary Judgment is **GRANTED.** The tax sale and deed are void and shall be set aside.

**AND IT IS SO ORDERED.**

dress the Massengails' three remaining argu-ments in support of setting aside the tax sale.