LOCKEMY, C.J.:
**140 Coretta McMillan appeals a circuit court order quieting title in favor of Ralph Johnson for a property he purchased at a tax sale. On appeal, she argues the circuit court erred in (1) failing to overturn the tax sale despite concluding the notice of levy was not posted on the property, (2) finding the two-year statute of limitations expired prior to McMillan filing her counterclaim, (3) ruling the Forfeited Land Commission properly assigned its bid to Johnson, and (4) declining to find the tax sale void as a matter of law because it was not held in strict compliance with statutory requirements. We reverse and remand.
**141 Facts and Procedural History
Bessie and Willis[1] Thompson (collectively, the Decedents) died in 2004 and 2005, respectively. At the time of their deaths, the Decedents owned a single-family home in Bamberg County (the Residence). Willis devised the Residence to McMillan and his two other grandchildren; however, the Decedents' estate was not submitted to probate and the Decedents remained the record owners of the property.[2]
Although McMillan paid the 2005 property tax for the Residence, she did not notify Bamberg County of the Decedents' death nor did she provide a substitute address where the tax notices should be mailed. In the spring of 2007, Bamberg County sent a letter to the Residence stating the 2006 property tax remained unpaid. In May 2007, Bamberg County sent a second notice to the Residence via certified mail. According to Bamberg County records, the certified envelope was returned as undelivered with the receipt marked "Deceased" above the Decedents' names. McMillan did not receive the delinquent *803 tax notices, and in the summer of 2007 she rented the Residence to Bernard Hallman.
After the second delinquent tax notice was returned as undelivered, Bamberg County referred the Residence to its Delinquent Tax Office (Tax Office) to post a notice of levy on the property and to include the property in a tax sale. The tax sale took place in November 2007, and pursuant to statute, the Tax Office submitted a minimum bid on behalf of the Forfeited Land Commission (FLC)-a commission within each county which exists to bid on real property otherwise not sold at a tax sale, and which holds title to that property until it can be sold or disposed of on such terms as appear to be in the county's best interest.[3] However, following the tax sale, Johnson contacted the Tax Office with an offer to purchase several dozen of the properties that had not been sold, including the Residence. The Tax Office agreed to assign Johnson the bids it had submitted on behalf of the FLC, thereby allowing **142 Johnson to purchase the Residence and thirty-eight other properties for the minimum bid amount.
In January 2009, McMillan, apparently unaware the Residence had been sold in 2007, paid a portion of the outstanding property taxes. Bamberg County subsequently sent McMillan a letter acknowledging receipt of her payment and informing her there were still delinquent taxes on the Residence. The letter did not mention the tax sale.
When Johnson acquired a deed for the Residence in February 2009, he learned it was still occupied. Johnson first personally contacted the tenant, Hallman, requesting that he move out of the Residence. In January 2010, after Hallman had still not vacated the Residence, Johnson filed an eviction action against him in magistrate's court.
Hallman subsequently notified McMillan of the eviction action. McMillan responded by contacting Johnson to inform him she had recently paid a portion of the outstanding property taxes and would be challenging the eviction action. However, the magistrate held Johnson's eviction action in abeyance when, in February 2010, the FLC filed a separate action in the circuit court to set aside the tax deeds for the Residence and the thirty-eight other properties Johnson acquired following the tax sale.
In its lawsuit against Johnson, the FLC alleged the Tax Office had inappropriately assigned its bids to Johnson without the FLC's authority and had not conducted the tax sale in compliance with the "rigid statutory structure." Johnson answered, denying the tax sale was improper and asserting he had negotiated the purchase with the Tax Office, who was acting on behalf of the FLC when it assigned Johnson the bids. Johnson further claimed his deeds could not be challenged due to the lapse of the two-year statute of limitations contained in section 12-51-160 of the South Carolina Code (2014). Johnson also filed a cross-claim and third-party complaint seeking to quiet title as to McMillan and the owners of the other properties.
At a November 2013 hearing on the FLC's action, McMillan appeared and informed the court she was an heir of the Decedents. The FLC abandoned its suit, and the circuit court dismissed the FLC's complaint and Johnson's counterclaims **143 against the FLC with prejudice. The circuit court then entered a default judgment in favor of Johnson on his cross-claims to quiet title for all of the properties he acquired by virtue of the tax sale except for the Residence.
On April 8, 2014, McMillan filed an answer and counterclaim to Johnson's quiet title action. In his reply, Johnson maintained McMillan could not contest the validity of the tax sale because the claim was barred by the two-year statute of limitations. The circuit court held a bench trial in September 2014.
At trial, Johnson acknowledged he did not attend the tax sale but contended he had received a valid assignment of the bid for the Residence from the Tax Office, who was acting on behalf of the FLC. Johnson also testified he had paid over $3,000 in property taxes since acquiring the Residence.
*804 Sharon Williams, the Delinquent Tax Collector for the Tax Office, testified as to the county's procedure for collecting delinquent taxes. She explained that after the second tax notice was returned to their office with the envelope marked "Deceased" above the Decedents' names, the next step would have been to post a notice of levy at the Residence. When asked if the Residence was properly posted, she said she believed so because only the copy of the notice of levy was in the county file, not the brightly colored notice that would have been posted on the property. However, she acknowledged she had no personal knowledge regarding whether the Residence was posted because she was not the Delinquent Tax Collector at the time. Williams noted that although the file contained places for witnesses to the posting to sign, no one had acknowledged witnessing the posting of the Residence. She testified the Tax Office's current posting process involved a witness and photographs but was unaware of the previous posting process.
Although Hallman had lived at the Residence since 2007, he testified he did not receive any mail regarding property taxes nor did he ever see a notice of levy posted on the property. Hallman acknowledged receiving a letter from Johnson explaining Johnson had purchased the Residence and wanted Hallman to vacate; Hallman said he subsequently forwarded the letter to McMillan.
**144 McMillan confirmed Hallman gave her the letter from Johnson, but testified Hallman had not forwarded any delinquent tax notices. McMillan also denied seeing a notice of levy posted on the Residence or receiving any notices at her personal address notifying her of the tax sale.
Following the bench trial, the circuit court issued an order quieting title in favor of Johnson. The circuit court found (1) the Tax Office was authorized to assign the bids to Johnson; (2) Bamberg County and the Tax Office had complied with all of the statutory procedures for conducting a tax sale except for posting a notice of levy on the Residence; (3) McMillan waited an excess of four years after learning of Johnson's deed to challenge the tax sale; and (4) Johnson's action to evict Hallman was an affirmative step that triggered the two-year statute of limitations, which ran on January 26, 2012. This appeal followed.
STANDARD OF REVIEW
"An action to remove a cloud on and quiet title to land is one in equity." Bryan v. Freeman , 253 S.C. 50, 52, 168 S.E.2d 793, 793 (1969). In actions at equity, tried before a judge alone, we are free to find the facts according to our own view of the preponderance of the evidence. Townes Assocs. v. City of Greenville , 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). "However, this broad scope of review does not require an appellate court to disregard the findings below or ignore the fact that the [circuit court] is in the better position to assess the credibility of the witnesses." Pinckney v. Warren , 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001).
LAW/ANALYSIS
I. Challenge to the Tax Sale[4]
McMillan contends that in light of the fact the circuit court found the Tax Office failed to post a notice of levy on the Residence, the circuit court erred by concluding her challenge to the tax sale was barred by the statute of limitations. We agree.
**145 "This [c]ourt has consistently held the enforcing agencies of government to strict compliance with all the legal requirements surrounding tax sales." Dibble v. Bryant , 274 S.C. 481, 483, 265 S.E.2d 673, 675 (1980). "[A]ll requirements of the law leading up to tax sales [that] are intended for the protection of the taxpayer against surprise or the sacrifice of his property are to be regarded [as] mandatory and are to be strictly enforced." Donohue v. Ward , 298 S.C. 75, 83, 378 S.E.2d 261, 265 (Ct. App. 1989) (citing Osborne v. Vallentine , 196 S.C. 90, 94, 12 S.E.2d 856, 858 (1941) ). "The rationale behind posting [a tax sale] notice is to notify the defaulting taxpayer that delinquent property taxes are due." Smith v. Barr , 375 S.C. 157, 161, 650 S.E.2d 486, 488 (Ct. App. 2007).
Section 12-51-40 of the South Carolina Code (2014) lays out the statutory procedure *805 for the sale of a defaulting taxpayer's property. The delinquent tax collector is required to mail a notice of delinquent property taxes to the defaulting taxpayer. § 12-51-40(a). If the taxes remain unpaid after thirty days, the delinquent tax collector is permitted to take exclusive possession of the property by mailing notice to the defaulting taxpayer by "certified mail, return receipt requested-restricted delivery." § 12-51-40(b). However, if the certified mail notice is returned, the delinquent tax collector must "take exclusive physical possession of the property against which the taxes ... were assessed by posting a notice at one or more conspicuous places on the premises, ... reading: 'Seized by person officially charged with the collection of delinquent taxes ... to be sold for delinquent taxes.' " § 12-51-40(c).
Under section 12-51-160 of the South Carolina Code (2014), "[a]n action for the recovery of land sold pursuant to this chapter or for the recovery of the possession must not be maintained unless brought within two years from the date of sale ...." This court has found the purpose of the statute of limitations in section 12-51-160 is "to create a time limit during which one who lost title to property through a tax sale, after proper notice, may attempt to regain title." Corbin v. Carlin , 366 S.C. 187, 194, 620 S.E.2d 745, 749 (Ct. App. 2005).
In the instant case, we agree with the circuit court that McMillan proved by a preponderance of the evidence that the Tax Office did not properly post a notice of levy on the **146 Residence prior to the tax sale. Williams, the current Delinquent Tax Collector for Bamberg County, was able to testify about what was in the file for the Residence. She testified the file contained the certified mail envelopes that were sent to the Residence and were returned and marked that the Decedents were deceased. Because the certified letters were returned, the Tax Office was required to post the notice at the Residence. Williams stated she assumed the Residence had been posted in compliance with section 12-51-40(c) because only the copy of the notice of levy was in the file, not the brightly colored notice that would have been posted on the property. However, Williams agreed she did not witness the Residence being posted and acknowledged the place in the folder where a witness to the posting would sign had not been completed. Furthermore, both Hallman and McMillan testified they never saw a notice of levy posted at the Residence. Accordingly, we find a preponderance of the evidence shows the notice of levy was not posted, and therefore, the tax sale was not conducted in compliance with the statutory requirements.
Next, turning to the question of whether the statute of limitations should apply to bar McMillan's action, we note there are two seemingly divergent lines of cases "regarding if and when the statute of limitations beings to run in situations such as this." King v. James , 388 S.C. 16, 26, 694 S.E.2d 35, 40 (Ct. App. 2010).
A number of courts have indicated that when a tax sale is not held in strict compliance with the statute, such a defect is jurisdictional and the statute of limitations may not run at all. See In re Ryan Inv. Co. , 335 S.C. 392, 395, 517 S.E.2d 692, 693 (1999) ("Even actual notice is insufficient to uphold a tax sale absent strict compliance with statutory requirements."); Aldridge v. Rutledge , 269 S.C. 475, 478, 238 S.E.2d 165, 166 (1977) ("Without strict compliance with the statutory requirements, a tax sale may not be upheld."); Donohue v. Ward , 298 S.C. at 83, 378 S.E.2d at 265 ("[F]ailure to give the required notice is a fundamental defect in the tax proceedings which renders the proceedings absolutely void."); Rives v. Bulsa, 325 S.C. 287, 293, 478 S.E.2d 878, 881 (Ct. App. 1996) ("Failure to give the required notice is a fundamental defect in the tax proceedings which renders the proceedings absolutely void.");
**147 Smith v. Barr , 375 S.C. at 164, 650 S.E.2d at 490 ("[T]he failure to give the required statutory notice renders the tax sale invalid."); Reeping v. JEBBCO, LLC , 402 S.C. 195, 202, 740 S.E.2d 504, 507 (Ct. App. 2013) ("[T]he statute of limitations did not preclude the [property owner's] claim ... as the failure to give proper notice rendered the tax sale void.").
There are also cases in which our courts have suggested that even in the absence of strict compliance, the statute of limitations will begin to run when the purchaser at a tax *806 sale comes into possession. See Dibble v. Bryant , 274 S.C. at 487, 265 S.E.2d at 677 ("The statute [of limitations] was intended to bar a defaulting and ousted taxpayer from maintaining an action to defeat the title of the tax sale purchaser and recover the land if brought more than two years from the date the purchaser came into possession."); Scott v. Boyle , 271 S.C. 252, 256, 246 S.E.2d 887, 889 (1978) (finding the statute of limitations did not bar an action to set aside a tax deed brought six years after the sale because there was insufficient evidence the purchaser had been in possession of the property in excess of two years); Glymph v. Smith , 180 S.C. 382, 384, 185 S.E. 911, 914 (1936) (holding the two-year statute of limitations did not begin to run because the sheriff never took possession of the subject property, and the purchaser was never put into possession following the execution of the tax deed); Gardner v. Reedy , 62 S.C. 503, 503, 40 S.E. 947, 947-48 (1902) (finding a taxpayer "could not bring his action until there was a person on the land withholding possession from him").
In Leysath v. Leysath , 209 S.C. 342, 349-50, 40 S.E.2d 233, 236-37 (1946), our supreme court addressed the distinction between jurisdictional defects, which render the tax sale void and the statute of limitations inapplicable, and defects it called "mere irregularities," which will render the tax sale void but only if challenged within the statutory timeframe. The court wrote:
It appears to be the general rule that a short statute of limitation[s] of the kind under consideration does not apply where, by reason of some jurisdictional defect, the tax deed is absolutely void upon its face; and perhaps the majority of the courts hold that the bar of the statute does not apply if there are jurisdictional or fundamental defects in the tax proceedings which render such proceedings absolutely void.
**148 But the courts following the majority rule are not in entire accord as to the jurisdictional grounds which render a tax deed absolutely void. In some states defects which in others are deemed jurisdictional are considered mere irregularities.
Id. at 349, 40 S.E.2d at 236. Nonetheless, the Leysath court declined to "lay down a general rule defining those defects in tax proceedings which should be considered as mere irregularities, to which the statute under consideration would apply, and those which should be deemed jurisdictional, so as to render the statute inapplicable." Id. at 351, 40 S.E.2d at 237. With regard to the defects in the tax sale which the delinquent property owner complained of in that case-(1) the attempted levy was posted not by the tax collector, but by the assistant tax collector; (2) the assistant tax collector did not carry the tax executions with him when he posted the levy; and (3) the accumulated interest was improperly included in the tax executions-the court held, "[W]e do not think that the[se] can be properly classified as jurisdictional defects within the purview of the rule which we have stated, but rather are among the irregularities which the statute in question was framed to cover and set at rest." Id. at 349-50, 40 S.E.2d at 236.
We find that the failure to provide the required statutory notice is the type of jurisdictional defect contemplated in Leysath that renders the tax sale void and the statute of limitations inapplicable. See Rives, 325 S.C. at 293, 478 S.E.2d at 881 ("Failure to give the required notice is a fundamental defect in the tax proceedings which renders the proceedings absolutely void.") Here, the circuit court held, and we agree, that the notice of levy was not posted on the Residence prior to the tax sale as required by section 12-51-40(c). Consequently, we find the statute of limitations did not run because the tax sale was void from the onset.
Furthermore, assuming the statute of limitations applied in the present case, we do not believe it would prevent McMillan from challenging Johnson's deed. Although Johnson filed an eviction action, Hallman continued to live in the Residence as McMillan's tenant, and the magistrate never issued an eviction order. Because Johnson did not oust McMillan of possession, Johnson could not be said to have "withheld **149 possession" from McMillan so as to trigger the statute of limitations. Accordingly, we reverse the circuit court's holding that the two-year statute of limitations barred McMillan's action to set aside Johnson's tax deed for the Residence.
Because the tax sale is void, we remand this case to the circuit court to determine what amount, if any, Johnson is entitled to receive.
*807 II. Assignment of the FLC's Bid
McMillan also argues the circuit court erred in finding the FLC properly assigned Johnson its bid for the Residence. Because our decision to void the tax sale is dispositive of this issue, we decline to rule on it. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding appellate courts need not address remaining issues when the resolution of a prior issue is dispositive).
CONCLUSION
For the foregoing reasons, the decision of the circuit court is
REVERSED AND REMANDED.[5]
HUFF and SHORT, JJ., concur.

Mr. Thompson is referred to as both Willis and Willie in the record.

McMillan is the only heir still a party to this action.

S.C. Code Ann. § 12-51-55 (Supp. 2017) ; S.C. Code Ann. §§ 12-59-10 to -150 (2014 & Supp. 2017).

This discussion combines McMillan's first, second, and fourth issues on appeal.

This case has taken longer than usual in the appellate process. A vacancy occurred on this court in 2016 with the election of former Chief Judge John Few to the South Carolina Supreme Court and Associate Judge James Lockemy to the position of Chief Judge. Former Chief Justice Costa Pleicones appointed Circuit Judge Tanya Gee as an Acting Judge of this court in the summer of that year. Judge Gee served as a law clerk, Chief Staff Attorney, and Clerk of Court for the Court of Appeals. After this appointment she was going to be, temporarily at least, a judge on the court. No one has ever held this number of positions on this court. Judge Gee was filled with pride and happiness, as were her colleagues. She was assigned this case as her first case as a Judge on the court in which she had devoted so much of her life. Fate intervened before she could sit on a panel to hear this case and be recorded as issuing an opinion for the Court of Appeals. A disease that has caused so much sadness to so many ended her life on September 28, 2016. The appellate process had to begin anew after her death. This note records her positions, her work, and her devotion to this court in so many roles, culminating at the time of her death as a member of the South Carolina Court of Appeals.